Samuel E. Kramer, Esq.
225 Broadway - Suite 3300
New York, New York 10007
(212) 285-2290
*Attorney for Plaintiff, DNT Enterprises, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
DNT ENTERPRISES, INC.,

                    Plaintiff,

    -against-

TECHNICAL SYSTEMS,
A DIVISION OF RAE CORPORATION,

                    Defendant.
------------------------------------------------------X

Case No.:07 Civ. 8661 (LLS)
ECF CASE

## COMPLAINT IN A CIVIL ACTION

        Plaintiff, DNT Enterprises Inc., by its attorney, Samuel E. Kramer, Esq., as and for its Complaint herein, sets forth and alleges as follows:

### PRELIMINARY STATEMENT:

1.        This is an action brought by plaintiff, DNT Enterprises, Inc., the exclusive New York metropolitan area representative of defendant, Technical Systems a Division of RAE Corporation, an Oklahoma manufacturer of heating, ventilation, air conditioning and refrigeration ("HVACR") equipment, arising from defendant's unilateral, unjustified and unlawful purported cancellation of the parties' representation agreement, pursuant to which plaintiff had been the exclusive representative of defendant in the New York metropolitan area for over ten years – and pursuant to which plaintiff has an absolute right to continue to represent defendant through March, 2008.

-1-

2.        Prior to plaintiff's representation of it, defendant had no presence in New York and sold none of its products here.   Plaintiff singlehandedly developed the highly competitive New York market for defendant's HVACR products by locating scores of customers and providing essential assistance to defendant, including countless hours of expert advice to defendant, to help create products which are specifically designed for use in New York area buildings.  Yet, with absolutely no lawful basis, and in an act of bad faith, defendant has purported to unilaterally terminate the parties' contract, over six months prior to its scheduled expiration date of March, 2008.

3.        As a result of defendant's conduct, plaintiff has sustained and will continue to sustain money damages, as well as damages to its reputation within the insular community of engineers responsible for the selection of the highly specialized HVACR equipment used in skyscrapers and other large buildings in the New York metropolitan area.  Defendant's actions will create confusion in the marketplace and deprive plaintiff of its right, in the face of an agreed deadline and to,  in a businesslike way, locate alternative sources of  HVACR equipment for plaintiff's customers.  Thus, because plaintiff is likely to succeed on the merits, will suffer irreparable damage to its reputation and because the equities distinctly favor plaintiff, immediately after commencement of this case, plaintiff shall seek preliminary injunctive relief, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.

**<u>PARTIES:</u>**

4.        Plaintiff is a Delaware corporation with its principal place of business in the County, City and State of New York

5.        Upon information and belief, as set forth in the written agreement between the

parties, dated March 2, 2007 (the "Current Representation Agreement"), defendant is "an Oklahoma corporation having its principal place of business in the Mid-America Industrial Park, approximately four miles south of Pryor, Oklahoma".

6.        The Current Representation Agreement states: "<u>No Agency Relationship.</u> Representative [*i.e.,* plaintiff] is an independent contractor, and is expressly prohibited from making any representation on behalf of Technical Systems [*i.e.*, defendant] not expressly approved in writing by Technical Systems. ..."

<u>**JURISDICTION AND VENUE:**</u>

7.        This Court has jurisdiction over this case pursuant to 28 U.S.C.§1332(a)1 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

8.        Venue in this case is proper in this District pursuant to 28 U.S.C.§1391(a)2; pursuant to New York Civil Practice Law and Rules §302(a)(1) this Court has jurisdiction because defendant has contracted to supply goods or services in New York and, furthermore, has announced that it will have an exhibit at the "AHR Expo" which advertises itself as "the world's largest HVAC&R  trade show event for professionals to buy, sell, network and learn" and is scheduled to take place at the Javits Convention Center in New York County on January 22 through January 24, 2008, as set forth in the web-pages posted by defendant and the producers of the AHR Expo.

9.        The Current Representation Agreement states: "<u>Governing Law.</u> This agreement is entered into in the State of Oklahoma and shall be construed for all purposes in accordance with the laws of that State", but makes no mention of the venue of a case arising therefrom.

## BACKGROUND:

### Plaintiff's Involvement in the HVACR Business

10.        HVACR equipment is one of the crucial elements in the construction of all office and apartment buildings, whether large skyscrapers, smaller "taxpayers" or other structures.

11.        HVACR equipment includes, but is not limited to condensers, condensing units, chillers, air handlers, roof-top units and fluid coolers.

12.        Throughout the United States, there are a number of manufacturers of HVACR equipment, including defendant.

13.        Plaintiff serves as the manufacturers' representative in the New York Metropolitan area for a number of different manufacturers of, *inter alia*, HVACR equipment.

14.        Plaintiff has been in the business of representing manufacturers of HVACR equipment for over fourteen years.

15.        Plaintiff has specialized knowledge of HVACR equipment, which it has developed during the fourteen years that it has been in business.

16.        Plaintiff's specialized knowledge of the HVACR business includes, but is not limited to knowledge of:

a.        The particulars and qualities of HVACR products and machinery, produced and/or manufactured in the United States;

b.        The needs and requirements of the various office buildings, apartment buildings or other structures in the New York metropolitan area;

c.        The engineers, builders, contractors and other construction specialists responsible for the selection and installation of HVACR equipment in construction

-4-

in the New York metropolitan area;

d.        The latest developments and improvements in HVACR technology; and

e.        The means and manners by which HVACR equipment may be fitted to new construction and renovation of the sorts of buildings constructed or renovated in the New York metropolitan area.

17.        Plaintiff's specialized knowledge also includes an understanding and comprehension or the physical, financial and myriad other considerations required to be taken into account in determining the particular HVACR equipment necessary to properly function in the particular construction jobs to be performed in the New York metropolitan area.

**Plaintiff's Performance of Its Duties**
**Pursuant to the Parties' Agreement:**

18.        In or about 1996, plaintiff entered into the first of eleven written agreements with defendant, each with a duration of one year and expiring in March of each year, pursuant to which plaintiff became and remained defendant's exclusive representative in the New York metropolitan area (the "Prior Representation Agreement(s)").

19.        The Prior and Current Representation Agreements were written solely by defendant.

20.        The Prior Representation Agreements  and the Current Representation Agreement define the geographic area within which plaintiff serves as the exclusive representative of defendant as: "The Following Counties [*sic.*] in the State of New York: Brooklyn, Queens, Manhattan, Bronx, Staten Island, Long Island, Westchester, Putnam, Orange, Rockland." (the "New York Metropolitan Area").

21.        Plaintiff, as the exclusive New York Metropolitan Area representative of defendant

pursuant to its obligations under the Prior Representation Agreements and Current Representation Agreement, undertook to and did:

a.          Develop a fair share of the market reasonably available for defendant's products in the New York Metropolitan Area;

b.          Provide adequate customer service of defendant's HVACR products and equipment in the New York Metropolitan Area;

c.          Maintain sufficient working capital to represent defendant in the New York Metropolitan Area; and

d.          Use resources necessary to effectively represent defendant in the New York Metropolitan Area.

22.          Throughout the past eleven years, plaintiff, in furtherance of its obligations under the Prior Representation Agreements and Current Representation Agreement, has worked closely with defendant in the development and marketing of HVACR products and equipment to be sold and used in the New York Metropolitan Area and promoted goodwill for defendant and maintained a sufficient organization to accomplish the effective coverage and development of the  New York Metropolitan Area by, *inter alia*:

a.          Maintaining contacts with builders, architects, engineers and others involved in the construction business in the New York Metropolitan Area;

b.          Preparing catalogs and other presentations to purchasers and potential purchasers of defendant's products and equipment in the New York Metropolitan Area ; and

c.          Advising builders and engineers with respect to the most appropriate HVACR

equipment in the various construction jobs performed or undertaken in the New York Metropolitan Area.

23.    According to plaintiff's books and records, during the past eleven years, pursuant to its obligations under the Prior Representation Agreements and Current Representation Agreement, sales of defendant's HVACR equipment in the New York Metropolitan Area have been as follows:

| | Year: | Sales by Defendant: |
|---|---|---|
| a. | 1996 | $      5,472.33 |
| b. | 1997 | $   640,738.95 |
| c. | 1998 | $ 1,708,468.44 |
| d. | 1999 | $ 1,106,439.77 |
| e. | 2000 | $ 3,610,334.39 |
| f. | 2001 | $ 1,201,028.05 |
| g. | 2002 | $ 2,032,032.53 |
| h. | 2003 | $ 1,298,431.31 |
| i. | 2004 | $ 1,586,858.52 |
| j. | 2005 | $ 1,317,800.86 |
| k. | 2006 | $ 1,618,175.94 |
| l. | 2007 (placed through 9/28/07) | $   904,946.76 |

24.    In an e-mail circulated on January 8, 2007, defendant identified plaintiff as having been Number "1" on its list of "2006 Top Performers" in equipment sales and stated to plaintiff: "Thanks as always to the Top Dogs of TSI".

25.          In March, 2007, defendant advised plaintiff that the Professional Golf Association championship tournament was to be played at Southern Hills Golf Course, near defendant's place of business in Tulsa, Oklahoma, in August, 2007,  that defendant had tickets and advised: "If you have a customer you want to bring to this, I am giving you first shot at getting on the list"; throughout July and August, 2007, the parties made arrangements  – including arranging flights, travel itineraries, tours of defendant's plant and purchase of PGA Tournament shirts  –  in conjunction with plaintiff's marketing efforts.

### Defendant's Alleged Termination of
### The Current Representation Agreement

26.          Prior to August, 2007, Sam Jones, defendant's Executive Vice President responsible for Sales and Marketing, was plaintiff's primary contact with defendant.

27.          On August 20, 2007, defendant issued a public announcement that Sam Jones was "to be replaced by Kevin Trowhill, of "Webco, Inc. (CES Company) ["Webco"] in Springfield, Missouri. While at Webco, Kevin, was National Sales Manager."

28.          Webco is a competitor of plaintiff.

29.          Upon information and belief, on or about September 5, 2007, Mr. Trowhill commenced his duties on behalf of defendant.

30.          Throughout the month of September, 2007 plaintiff continued to present bids to defendant for HVACR machinery and equipment in the New York Metropolitan Area, including the following bids and orders for equipment manufactured by defendant:

a.          On September 19, 2007, a bid with a value of $1,615,000.00;

b.          On September 20, 2007 Order T-7924 with a value of $25,116.00;

c.          On September 20, 2007, Order T-7924 with a value of $24,726.00;

d.          On September 21, 2007, Order T-7505 with a value of $1,745.00;

e.          On September 21, 2007, a bid with a value of $1,110,822.00.

31.          The Prior and Current Representation Agreements set forth the following with respect

to the termination of same:

> This agreement may be terminated prior to the
> expiration of the Term set forth above only as follows:
> ... ii. Technical Systems may terminate this
> Agreement at any time if Technical Systems
> determines, in its sole discretion, that Representative
> has failed to develop a fair share of the market
> reasonably available for the Products in light of the of
> prevailing adequate customer service for the products,
> lacks sufficient working capital to provide the
> representation required by the trade in territory or
> otherwise fails to use the resources necessary to
> effectively represent Technical Systems. Technical
> Systems will provide 30-day protection on
> outstanding quotes the representative may have at the
> time of termination.

32.          On September 21, 2007, defendant, by e-mail letter attachment to plaintiff, signed by

Mr. Trowhill, bearing the reference "Cancellation of Representative Agreement" (the

"Cancellation Letter") which, in its entirety, stated:

> Per the terms of our contract agreement,
> effective today, I am canceling DNT Enterprises, Inc.
> representation contract for Technical Systems'
> products.
>
> Technical Systems will protect your
> outstanding quotations for a period of 30 days from
> 9/21/07. If there are projects that you would like
> protection beyond 30 days please identify those
> projects on your list and we will determine on a
> project by project basis the extent, if any, of extended

> protection.  This list must be submitted no later than 9/27/07.  After than time Technical Systems will have no obligation to protect your outstanding quotations. If you have a project that  is closing within those 30 days that is not on the protected list, we will deal with it on a job by job basis.
>
> I appreciate all of your efforts in representing Technical Systems equipment, but I feel it is  in our best interest to pursue a different direction for representation.  I wish you the best of luck.  If we can be of any service on an individual basis, don't hesitate to call.

33.     On September 24, 2007, Neil Thakker, plaintiff's President, placed a telephone call to and spoke with Eric Swank, President and Chief Executive Officer of defendant, with respect to the Cancellation Letter.

34.     On September 24, 2007, defendant, by e-mail to plaintiff, issued by Mr. Trowhill (the "September 24, 2007 e-mail"), stated, in its entirety, as follows:

> Neil, I understand that you have spoke with Eric regarding protection on some of your projects. We can accommodate your (4) month protection request on a project by project basis, it would be based upon the list you submit to us.  Feel free to call me (extension 165) if you would like to discuss prior to sending in your protection list.  Thank you, Kevin.

35.     The September 24, 2007 e-mail misrepresents the conversation between Mr. Thakker and Mr. Swank in that, *inter alia*:

a.      Mr. Thakker did not request "protection on some of [plaintiff's] projects";

b.      Mr. Thakker did not request a "(4) month protection"; and

c.      Mr. Thakker did not agree to provide a list in response to the alleged termination of the Representation Agreement.

-10-

36.        The Cancellation Letter, and the purported cancellation of the Current Representation Agreement alleged to have been effectuated thereby, were undertaken in bad faith.

37.        In the absence of the Cancellation Letter, the Current Representation Agreement would have remained in full force and effect through March, 2008.

38.        The Cancellation Letter was in derogation of and without regard to the requirements of the Termination Clause of the Current Representation Agreement as to:

a.        The substantive basis pursuant to which the Current (and Prior) Representation Agreement may be terminated, including but not limited to defendant's having disregarded the facts that plaintiff, in fact:

i.        Developed a fair share of the market reasonably available for defendant's products in the New York Metropolitan Area;

ii.        Provided adequate customer service of defendant's HVACR products and equipment;

iii.        Maintained sufficient working capital to represent defendant in the New York Metropolitan Area; and

iv.        Used resources necessary to effectively represent defendant pursuant to the Agreements in the New York metropolitan area.

b.        The procedure by which the Current (and Prior) Representation Agreement may be Terminated, including but not limited to:

i.        The neglect, failure and refusal of the Cancellation Letter and the September 24, 2007 e-mail to undertake to "provide 30 day protection on outstanding quotes the representative may have at the time of termination."

-11-

ii.          The purported requirement of the Cancellation Letter that: "This list

must be submitted no later than 9/27/07";  and

iii.          The failure to provide notice by Registered mail, postage prepaid, as

required by the Notice requirement of the Representation Agreement.

### AS AND FOR A FIRST CLAIM:
### (Breach of Contract)

39.        Plaintiff repeats and realleges each and every allegation set forth in paragraph "1"

through "38" hereof, inclusive, with the same force and effect as if same had been set forth

at length herein.

40.        The Current Representation Agreement, by its terms, is in full force and effect

through March, 2008.

41.        The Cancellation Letter, and the purported cancellation of the Current Representation

Agreement thereunder, otherwise in full force and effect through March, 2008, alleged to

have been effectuated thereby, constitute a breach of the Current Representation Agreement.

42.        As a result of defendant's breach of contract as aforesaid, plaintiff has sustained and

continues to sustain damages including but not limited to:

a.          Actual monetary damages which are or would otherwise be forthcoming by

reasons of all sales of defendant's HVACR products, machinery and equipment in

the New York Metropolitan Area during the period through and including March,

2008, pursuant to the Current Representation Agreement;

b.          Actual and consequential damages which are or would otherwise be

forthcoming from all sales of defendant's HVACR products, machinery and

equipment by reason of the attendance of builders, architects and engineers from the New York Metropolitan Area who shall attend the AHR Expo which is scheduled to take place at the Javits Convention Center in New York County on January 22 through January 24, 2008;

c.      Actual and consequential damages sustained or to be sustained by reason of plaintiff being unable to offer to its customers defendant's HVACR products, machinery and equipment through and including March, 2008;

d.      Actual and consequential damages sustained or to be sustained by reason of being require to advise the community of builders, architects and engineers that plaintiff had been terminated prior to the expiration of the term of the Current Representation Agreement in March, 2008.

43.      As a result defendant's breach of contract, plaintiff has sustained and will sustain damages in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

44.      By reason of the foregoing, defendant is liable and indebted to plaintiff in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

## AS AND FOR A SECOND CLAIM:
### (Anticipatory Breach of Contract)

45.      Plaintiff repeats and realleges each and every allegation set forth in paragraph "1" through "38" hereof, inclusive, with the same force and effect as if same had been set forth at length herein.

46.      The Representation Agreement is in full force and effect through March, 2008.

47.      The Cancellation Letter, and the purported cancellation of the Current Representation

-13-

Agreement thereunder, otherwise in full force and effect through March, 2008, alleged to have been effectuated thereby was without basis in law and fact and was purported to have been undertaken by defendant before the time for full and complete performance of the Representation Agreement.

48.     As a result of defendant's anticipatory breach of contract, plaintiff has sustained and continues to sustain damages including but not limited to:

a.     Actual monetary damages which are or would otherwise be forthcoming by reasons of all sales of defendant's HVACR products, machinery and equipment in the New York Metropolitan Area during the period through and including March, 2008, pursuant to the Current Representation Agreement;

b.     Actual and consequential damages which are or would otherwise be forthcoming from all sales of defendant's HVACR products, machinery and equipment by reason of the attendance of builders, architects and engineers from the New York Metropolitan Area who shall attend the AHR Expo which is scheduled to take place at the Javits Convention Center in New York County on January 22 through January 24, 2008;

c.     Actual and consequential damages sustained or to be sustained by reason of plaintiff being unable to offer to its customers defendant's HVACR products, machinery and equipment through and including March, 2008;

d.     Actual and consequential damages sustained or to be sustained by reason of being require to advise the community of builders, architects and engineers that plaintiff had been terminated prior to the expiration of the term of the Current

Representation Agreement in March, 2008.

49.     As a result defendant's anticipatory breach of contract, plaintiff has sustained and will

sustain damages in an amount to be calculated at trial but, in any event no less than

$5,000,000.00.

50.     By reason of the foregoing, defendant is liable and indebted to plaintiff in an amount

to be calculated at trial but, in any event no less than $5,000,000.00.

### AS AND FOR A THIRD CLAIM:
### (Oklahoma Statute §12A-1-304.  )

51.     Plaintiff repeats and realleges each and every allegation set forth in paragraph "1"

through "38" hereof, inclusive, with the same force and effect as if same had been set forth

at length herein.

52.     Pursuant to the Current Representation Agreement, plaintiff purchased from

defendant and defendant sold to plaintiff certain goods, *i.e.*, HVACR products, machinery

and equipment.

53.     The Current Representation Agreement is subject to the Oklahoma Uniform

Commercial Code, Title 12-A of the Oklahoma Statutes.

54.     Oklahoma Statute §12A-1-304 provides: "Every contract of duty within the Uniform

Commercial Code imposes an obligation of good faith in its performance and enforcement."

55.     Defendant's issuance of the Cancellation Letter, and the purported termination o the

Current Representation Agreement thereby, was a violation of the obligation of good faith

imposed upon defendant by reason of Oklahoma Statute §12A-1-304.

56.     As a result defendant's violation of Oklahoma Statute §12A-1-304, plaintiff has

sustained  and continues to be sustain damages, including but not limited to:

a.    Actual monetary damages which are or would otherwise be forthcoming by reasons of all sales of defendant's HVACR products, machinery and equipment in the New York Metropolitan Area during the period through and including March, 2008, pursuant to the Current Representation Agreement;

b.    Actual and consequential damages which are or would otherwise be forthcoming from all sales of defendant's HVACR products, machinery and equipment by reason of the attendance of builders, architects and engineers from the New York Metropolitan Area who shall attend the AHR Expo which is scheduled to take place at the Javits Convention Center in New York County on January 22 through January 24, 2008;

c.    Actual and consequential damages sustained or to be sustained by reason of plaintiff being unable to offer to its customers defendant's HVACR products, machinery and equipment through and including March, 2008;

d.    Actual and consequential damages sustained or to be sustained by reason of being require to advise the community of builders, architects and engineers that plaintiff had been terminated prior to the expiration of the term of the Current Representation Agreement in March, 2008.

57.    As a result defendant's anticipatory breach of contract, plaintiff has sustained and will sustain damages in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

58.    By reason of the foregoing, defendant is liable and indebted to plaintiff in an amount

to be calculated at trial but, in any event no less than $5,000,000.00.

## AS AND FOR A FOURTH CLAIM:
### (Specific Performance)

59.     Plaintiff repeats and realleges each and every allegation set forth in paragraph "1"
through "38" hereof, inclusive, with the same force and effect as if same had been set forth
at length herein.

60.     The Current Representation Agreement, by its terms, is a valid and binding agreement
between plaintiff and defendant is in full force and effect through March, 2008.

61.     The Cancellation Letter, and the purported cancellation of the Current Representation
Agreement thereunder, otherwise in full force and effect through March, 2008, alleged to
have been effectuated thereby was without basis in law and was in direct violation of the
terms of the Current Representation Agreement.

62.     As a result defendant's unlawful purported cancellation of the Current Representation
Agreement, plaintiff is entitled to enjoy the continued benefits thereof through March, 2008,
in the absence of which plaintiff will sustain damages in an amount to be calculated at trial
but, in any event no less than $5,000,000.00.

63.     By reason of the foregoing, defendant is liable to plaintiff for the specific
performance of the Current Representation Agreement through March, 2008.

## AS AND FOR A FIFTH CLAIM:
### (Declaratory Judgment)

64.     Plaintiff repeats and realleges each and every allegation set forth in paragraph "1"
through "38" hereof, inclusive, with the same force and effect as if same had been set forth
at length herein.

-17-

65.        Plaintiff lacks an adequate remedy at law.

66.        In the absence of declaratory relief stating that plaintiff is the exclusive representative of defendant in the New York Metropolitan Area, plaintiff shall sustain damages in and among the community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products and equipment in the New York Metropolitan Area and, more particularly, at the AHR Expo in New York County in January, 2008.

67.        By reason of the foregoing, a judgment must be made and entered declaring plaintiff to be defendant's exclusive representative in the New York Metropolitan Area until the expiration of the term of the Current Representation Agreement in March, 2008.

## AS AND FOR A SIXTH CLAIM:
### (Permanent Injunction)

68.        Plaintiff repeats and realleges each and every allegation set forth in paragraph "1" through "38" hereof, inclusive, with the same force and effect as if same had been set forth at length herein.

69.        Plaintiff lacks an adequate remedy at law.

70.        As a result of the Cancellation Letter, plaintiff has been required to advised the bidders identified at ¶30(a), *supra.*, dated September 19, 2007, with a value of $1,615,000.00 and ¶30(e), *supra.*, dated September 21, 2007, with a value of $1,110,822.00, thereby endangering the efficacy thereof, and creating the likelihood that these purchasers will be willing to consummate these bids.

71.        In the absence of injunctive relief, to be imposed with respect to the period continuing until the expiration of the term of the Current Representation Agreement in March, 2008,

defendant may grant to a competitor of plaintiff the right to be defendant's representative in the New York Metropolitan Area, prior to March, 2008, in violation of the terms of the Current Representation Agreement.

72.        In the absence of a permanent injunction, plaintiff shall sustain irreparable damages in and among the community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products and equipment in the New York Metropolitan Area and, more particularly, at the AHR Expo in New York County in January, 2008.

73.        By reason of the foregoing, a judgment must be made and entered declaring plaintiff to be defendant's exclusive representative in the New York Metropolitan Area until the expiration of the term of the Current Representation Agreement in March, 2008.

## JURY DEMAND:

74.        Pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands the right to a trial by jury for all the issues so triable.

WHEREFORE, plaintiff, DNT Enterprises, Inc., respectfully requests that the Court grant the following relief against defendant, Technical Systems a Division of RAE Corporation:

a.        On the First Claim, a money judgment in an amount to be calculated at trial, and in any event no less than $5,000,000.00;

b.        On the Second Claim, a money judgment in an amount to be calculated at trial, and in any event no less than $5,000,000.00;

c.        On the Third Claim, a money judgment in an amount to be calculated at trial, and in any event no less than $5,000,000.00;

-19-

d.      On the Fourth Claim, a judgment awarding to plaintiff specific performance of the Current Representation Agreement until the expiration of the term of the Current Representation Agreement in March, 2008;

e.      On the Fifth Claim, a judgment declaring plaintiff to be defendant's exclusive representative in the New York Metropolitan Area until the expiration of the term of the Representation Agreement in March, 2008;

f.      On the Sixth Claim, an injunction pursuant to which defendant be enjoined from entering into any agreement with any person or entity other than plaintiff to be defendant's representative in the New York Metropolitan Area until the expiration of the term of the Representation Agreement in March, 2008; and

g.      Such other, further and different relief as the Court deems just.

Dated:  New York, New York
        October 4, 2007

                        SAMUEL E. KRAMER, ESQ.
                        *Attorney for Plaintiff*
                        *DNT Enterprises, Inc.*


                        By:     S/Samuel E. Kramer
                                _____
                                Samuel E. Kramer (SK 6948)
                                225 Broadway - Suite 3300
                                New York, New York 10007
                                (212) 285-2290

-20-