UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DNT ENTERPRISES, INC.,                            :
                                                  :   Case No. 07 Civ. 8661 (LLS) (DCF)
                            Plaintiff,            :   ECF CASE
                                                  :
            -against-                             :
                                                  :
                                                  :
TECHNICAL SYSTEMS,                                :
A DIVISION OF RAE CORPORATION,                    :
                                                  :
                            Defendant.           :
-----------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David E. Ross, Esq.
Eric D. Herschmann, Esq.
Kimberly A. Horn, Esq.
1633 Broadway
New York, New York  10019
Telephone:  (212) 506-1700

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 4

      A.    TSI Is An Oklahoma Company Whose Offices, Employees
             and Operations Are Located Exclusively In Oklahoma ................. 4

      B.    TSI Is Not Doing Business In New York, And Is Not
             Transacting Business In New York In Connection With
             Its Contract With Plaintiff ................................................................. 5

      C.    The One Year Contract At Issue In This Case ................................ 6

      D.    The Dispute That Forms The Basis Of This Suit ........................... 7

      E.    Plaintiff's Amended Complaint Misstates Numerous
             Jurisdictional Allegations ................................................................. 9

ARGUMENT ..................................................................................................... 9

    I.    PLAINTIFF'S AMENDED COMPLAINT MUST BE
         DISMISSED FOR LACK OF PERSONAL JURISDICTION ................... 9

      A.    TSI Did Not Transact Business Within New York
             Nor Contract To Supply Goods In The State Within
             The Meaning Of C.P.L.R. § 302(a)(1) ............................................ 11

      B    Plaintiff's Causes Of Action Do Not Arise Out Of TSI's
             Minimal Contacts With New York State ....................................... 16

    II.    ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS
         ACTION TO THE NORTHERN DISTRICT OF OKLAHOMA
         PURSUANT TO 28 U.S.C. § 1404(A) ...................................................... 17

      A.    This Action Could Have Been Initiated In
             The Northern District of Oklahoma ............................................... 18

      B.    This Action Should Be Transferred in the
             Interests of Convenience and Justice ............................................. 19

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

A.I.L., a Div. of Cutler-Hammer, Inc. v. Symetrics Indus., Inc.,
  360 F. Supp. 1138 (E.D.N.Y. 1973) .......................................................................15-16

Ayala-Branch v. Tad Telecom, Inc., 197 F. Supp. 2d 13 (S.D.N.Y. 2002) ..................... 19

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
  171 F.3d 779 (2d Cir. 1999) ....................................................................10, 12, 13, 17

Best Van Lines, Inc. v. Walker, 490 F.3d 239 (2d Cir. 2007).....................................11, 17

Caulfield v. Imagine Advisors, Inc., No. 07 Civ. 1257, 2007 WL 4615504
  (S.D.N.Y. Dec. 27, 2007) ........................................................................................ 10

Chertok v. Ethyl Corp. of Canada, Ltd., 341 F. Supp. 1251 (S.D.N.Y. 1972)............15, 16

Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81 (1995) ....................... 18

Flaherty v. All Hampton Limousine, Inc., No. 01 Civ. 9939,
  2002 WL 1891212 (S.D.N.Y. Aug. 16, 2002) ...............................................16, 18, 19

Glassman v. Hyder, 23 N.Y.2d 354, 296 N.E.2d 259,
  296 N.Y.S.2d 783 (1968) ......................................................................................... 16

Johnson v. Ward, 4 N.Y.3d 516, 829 N.E.2d 1201, 797 N.Y.S.2d 33 (2005) .................. 11

Kramer v. Vogl, 17 N.Y.2d 27, 215 N.E.2d 159, 267 N.Y.S.2d 900 (1966) ..........3, 13, 17

Kronisch v. United States, 150 F.3d 112 (2d Cir. 1998) .......................................11, 16, 17

McGowan v. Smith, 52 N.Y.2d 268, 419 N.E.2d 321,
  437 N.Y.S.2d 643 (1981) ...............................................................................13, 16, 17

McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 229 N.E.2d 604,
  283 N.Y.S.2d 34 (1967) ...................................................................................*passim*

McShan v. Omega Louis Brandt Et Frere, S.A., 536 F.2d 516 (2d Cir. 1976) ...........13, 16

Merck &Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402
  (S.D.N.Y. 2006)........................................................................................................ 11

Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994)......................9-10

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

Scott v. Nat'l Ass'n for Stock Car Racing, Inc., No. 06 Civ. 6029,
    2008 WL 217049 (S.D.N.Y. Jan. 17, 2008) ................................................................. 10

## STATUTES AND RULES

28 U.S.C. § 1391(a) .................................................................................................... 18-19

28 U.S.C. § 1404(a) ........................................................................................... 1, 4, 18, 21

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 1, 20

N.Y. C.P.L.R. § 301 ........................................................................................................ 10

N.Y. C.P.L.R. § 302(a)(1) ....................................................................................... passim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DNT ENTERPRISES, INC.,                                :
                                                      :
                              Plaintiff,              :
                                                      :
              -against-                               :    Case No. 07 Civ. 8661 (LLS) (DCF)
                                                      :    ECF CASE
                                                      :
TECHNICAL SYSTEMS,                                    :
A DIVISION OF RAE CORPORATION,                        :
                                                      :
                              Defendant.              :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant Technical Systems, a division of RAE Corporation (hereinafter

referred to as "TSI" or "Defendant") respectfully submits this memorandum of law in

support of its motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ.

P. 12(b)(2) or, in the alternative, for an order, pursuant to 28 U.S.C. § 1404(a),

transferring the above-captioned action to the United States District Court for the

Northern District of Oklahoma.


### PRELIMINARY STATEMENT

This is a breach of contract case premised on diversity jurisdiction.  Plaintiff is a

New York independent contractor-representative of multiple manufacturers' HVAC lines

including a line manufactured in Oklahoma by Defendant TSI.  Plaintiff's amended

complaint asserts personal jurisdiction over TSI under New York's long-arm statute,

N.Y. C.P.L.R. § 302(a)(1), claiming TSI transacted business in New York in connection

with the contract, and that the claim arises out of such transaction of business in New

1

York.[1]  The facts and the law are otherwise.  All of TSI's actions which form the basis for

Plaintiff's breach of contract claims took place in Oklahoma, on a contract made in

Oklahoma, signed by Defendant in Oklahoma, performed by Defendant in Oklahoma,

allegedly breached in Oklahoma, and to which Oklahoma law expressly applies.  Indeed,

no part of this dispute concerns a single act or appearance by TSI in New York.

        As set forth below, TSI is an Oklahoma manufacturer incorporated in that state.

All of TSI's offices, employees and operations are in the Northern District of Oklahoma.

TSI is not alleged to, and does not, have any presence of any kind in New York,

evidenced by its lack of offices, employees, agents, property, phone number, bank

account, advertising, authorization to do business, or other New York contacts.  The one

year contract purportedly breached here was issued by TSI in Oklahoma, executed by TSI

in Oklahoma, is governed by Oklahoma law, was performed  by TSI in Oklahoma, and is

alleged to have been breached in Oklahoma where Plaintiff claims TSI wrongfully

terminated the agreement before rescinding the termination in Oklahoma.

        The contract is not for the supply goods in New York, but rather for Plaintiff to

obtain putative orders from its New York customers for TSI's products.  Under the

contract, Plaintiff solicits its customers for potential orders of TSI's products.  Potential

orders are then sent to Oklahoma for TSI's review, consideration and approval.  In those

cases where TSI approves an order, the equipment shipped thereunder is delivered

exclusively "F.O.B." Oklahoma, where title and risk of loss pass to the purchaser.  TSI

does not send its employees to New York to install equipment sold to Plaintiff's

customers, and only once in the past year sent one of its 280 employees to New York on

---

[1]  The Amended Complaint, filed on or about January 22, 2008, is hereinafter referred to as the "Amended Complaint" and cited as "Amend. Cmplt. ¶ __."

a service call to Plaintiff's customer, a visit having nothing whatever to do with the breach of contract dispute here. Furthermore, as Plaintiff concedes, TSI's short-lived termination of the contract took place in Oklahoma. There, TSI executives determined to terminate the agreement, then issued a letter effecting the termination from Oklahoma, and later issued another letter from Oklahoma rescinding the termination. As of the commencement of this suit, no meeting of any kind took place in New York regarding the termination or the rescission of same.

The Court need not break any new ground to conclude that personal jurisdiction is wholly lacking here. The New York Court of Appeals has addressed virtually identical facts and held that New York courts have no long-arm jurisdiction in a contract dispute over a foreign manufacturer like TSI who distributes its products FOB the foreign locale through orders solicited by the New York plaintiff. Indeed, in McKee Elec. Co. v. Rauland-Borg Corp., the New York Court of Appeals found that defendant-manufacturer's contacts with New York -- which were more extensive that even alleged here -- to be "so infinitesimal" that jurisdiction could not be sustained. 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37 (1967); see also Kramer v. Vogl, 17 N.Y.2d 27, 215 N.E.2d 159, 267 N.Y.S.2d 900 (1966). As Plaintiff cannot carry its burden of establishing the Court's long-arm jurisdiction over TSI, the amended complaint must be dismissed.

Such dismissal works no hardship for Plaintiff. There is no statute of limitations issue here, and this case can be transferred to the Northern District of Oklahoma (where Plaintiff could have sued originally), which is of course highly experienced in the application of Oklahoma law, which governs the contract in question. In fact, pursuant to

the Court's authority under 28 U.S.C. § 1404(a), this case should be transferred because an alternative forum is available and the interests of convenience and justice clearly favor this action being litigated in Oklahoma. Here, the key witnesses involved in the termination are all located in Oklahoma, and at least one Oklahoma witness is no longer under TSI's employ. TSI's records are likewise located in Oklahoma. Forcing TSI's executives and employees, both former and current, to litigate in New York would therefore create an undue burden, both on the individuals, and on TSI's resources.

Accordingly, TSI respectfully submits that the Court should dismiss the Amended Complaint, or, in the alternative, order that this case be transferred to the Northern District of Oklahoma.

## STATEMENT OF FACTS

### A.     TSI Is An Oklahoma Company Whose Offices, Employees And Operations Are Located Exclusively In Oklahoma

TSI is an Oklahoma-based manufacturer that specializes in the production of engineered cooling systems which are produced at TSI's manufacturing facility in Oklahoma. (Swank Aff. ¶ 3).[2] TSI was first founded and incorporated in Oklahoma in 1971, and has continuously operated in that state since its founding. (Id.). TSI's only offices and its sole manufacturing facility are located in Pryor, Oklahoma. (Swank Aff. ¶ 4). Together with its parent RAE Corporation, TSI has about 280 employees, all of whom live and work in Oklahoma. (Id.).[3] TSI does not have any offices, employees or operations outside the state of Oklahoma. (Id.)

---

[2]   The Affidavit of TSI's chief executive Eric Swank, sworn to on February 28, 2008, is cited herein as "Swank Aff. ¶ __."

[3]   With the exception of a single non-TSI employee who works out of his home in Boise, Idaho.

TSI sells its equipment through independent contractors such as Plaintiff. (Swank Aff. ¶ 5). These independent contractors are not TSI's employees or agents, and they typically represent the product lines of multiple suppliers, including firms that compete with TSI. (Id.). As part of the arrangement with its independent contractors, TSI does not control any aspect of the independent contractors' operations, or those of such entities' employees. (Id.).

With a typical independent contractor "representative" such as Plaintiff, TSI and the contractor enter into a written representative contract governed by Oklahoma law, pursuant to which the independent contractor is authorized to work with their customers in their respective states and locales, to obtain offers to purchase TSI's equipment for sale and delivery in Oklahoma. (Swank Aff. ¶ 6). On occasion, the independent contractor will offer to purchase TSI's equipment for their own account in Oklahoma, and resell it to its customers. (Id.). In all events, TSI accepts or rejects any such orders in Oklahoma, and TSI sells its equipment only "FOB" Oklahoma, such that title to, and the risk of loss of, the equipment sold passes to the purchaser in Oklahoma. (Id.).

**B.     TSI Is Not Doing Business In New York, And Is Not Transacting Business In New York In Connection With Its Contract With Plaintiff**

TSI is not alleged to, and does not, do business in New York. (Swank Aff. ¶ 7). TSI is not registered nor authorized to do business in New York, and has no agent for service of process here. (Id.). TSI has never been served with process in New York, including in this case. (Id.). TSI has never been sued (or initiated a lawsuit) in New York. (Id.).

Indeed, TSI could hardly have less contact with New York: TSI has no offices, no employees, no property, no agents, no telephone numbers, no addresses, no post office

boxes, nor any bank accounts in New York. (Swank Aff. ¶ 8). In addition, TSI does not advertise for business in New York, and TSI's Oklahoma employees visit the state of New York only on extremely rare occasion. (Swank Aff. ¶¶ 8-9). For example, in 2007, only one of TSI's employees made a single sales trip to New York, and that trip was to meet with a New Jersey based representative, and was completely unrelated to Plaintiff or Plaintiff's New York customers. (Swank Aff. ¶ 9). Furthermore, in connection with equipment sold in Oklahoma to Plaintiff's customers, in 2007 a single TSI employee made one service call to New York. (Id.). Neither of those two limited trips to New York had anything to do with the contract termination that is the subject of this case. (Id.). Moreover, in 2007, the total sales of TSI's equipment to Plaintiff's New York based customers, represented less than 3% of the company's national sales. (Swank Aff. ¶ 10).

### C.    The One Year Contract At Issue In This Case

Over the years, TSI has entered into separate one year contracts with Plaintiff, pursuant to which TSI has appointed Plaintiff as its representative in several counties in New York for the solicitation of orders from Plaintiff's customers. (Swank Aff. ¶ 11). The only contract that is the subject of the present case was entered into March 2, 2007 (the "Contract"), and expires in a few days. (Id.).

It is undisputed that the Contract was prepared by TSI in Oklahoma (see Amend. Cmplt. ¶ 22, at p. 6), and, as recited therein, the Contract was "entered into in the State of Oklahoma." (Swank Aff. ¶ 12, Ex. 1, ¶ 12, at p. 4). TSI's representative signed and thereby accepted the Contract at TSI's offices in Oklahoma. (Swank Aff. ¶ 12).

Pursuant to the terms of the Contract, Plaintiff is an independent contractor of TSI. (Swank Aff. ¶ 13, Ex. 1, ¶ 6, at p. 3). As such, Plaintiff is expressly prohibited from making any representations on behalf of TSI without its prior written approval and/or implying, either directly or indirectly, that Plaintiff is an agent of, or has any authority to bind, TSI. (Id.). Under the Contract, Plaintiff is responsible for soliciting and procuring orders for TSI's products from Plaintiff's customers. (Swank Aff. ¶ 13, Ex. 1, ¶ 2, at p. 2).

Upon receipt of written orders from Plaintiff's customers, Plaintiff is required to send the orders to TSI in Oklahoma. (Swank Aff. ¶ 14). Thereafter, acting exclusively in Oklahoma, TSI evaluates the orders to determine whether it is inclined to accept them. (Id.). All orders are subject to acceptance by TSI in Oklahoma, and TSI reserves the right to evaluate the credit worthiness of any of Plaintiff's customers and to reject any order. (Id., Ex. 1, ¶ 5, at p. 3. In cases where the order from Plaintiff is accepted by TSI in Oklahoma, the equipment that TSI agrees to sell is sold "F.O.B." Oklahoma. (Swank Aff. ¶ 14).

**D.    The Dispute That Forms The Basis Of This Suit**

On or about September 21, 2007, Kevin Trowhill, TSI's Vice President, whose office is in Pryor, OK, sent a letter from Oklahoma to Plaintiff canceling the Contract (the "Cancellation Letter") pursuant to the cancellation provisions thereof. (Swank Aff. ¶ 15). As permitted by the Contract, the early termination thereof was based on the Plaintiff's unsatisfactory performance during the contract term. (Id.). Prior to issuing the termination letter, three TSI executives in Oklahoma participated in discussions regarding

7

Plaintiff's failing performance, namely, Eric Swank, Kevin Trowhill and Sam Jones (who is now retired from TSI and continues to reside in Oklahoma).  (Id.).

Less than two weeks later, on or about October 4, 2007, Mr. Trowhill sent a follow-up letter from Oklahoma to Plaintiff rescinding TSI's prior cancellation of the Contract, and assuring Plaintiff that TSI would continue to honor the terms of the Agreement, which it has done. (Swank Aff. ¶ 16).  The determination to rescind the termination was made in Oklahoma by Mr. Swank and Mr. Trowhill. (Id.).  Thereafter, TSI continued to perform all of its obligations under the Contract, including the continued support of Plaintiff's efforts to obtain orders from its customers.  (Id.).  TSI did not breach the Contract in any respect, and TSI denies that the temporary termination caused any damage to Plaintiff.  (Id.).

The purported dispute between Plaintiff and TSI turns on whether TSI was properly within its rights to terminate the Contract when it did so.  (Swank Aff. ¶ 17).  That termination, and the subsequent rescission, were all accomplished at TSI's offices in Pryor, OK.  (Id.).  The determination to terminate, and/or to subsequently rescind the termination, were made by Mr. Swank, Mr. Trowhill, and Mr. Jones.  (Id.).  Each of these executives live and work in Oklahoma and all of the business records associated with TSI's relationship with Plaintiff are located in Oklahoma.  (Id.).  Having to travel to New York, where TSI has no offices or employees would be extremely inconvenient and burdensome to TSI and its employees.  (Id.).  Moreover, as Mr. Jones is a former employee, TSI can not procure his appearance in New York.  (Id.).

**E.      Plaintiff's Amended Complaint Misstates**
**Numerous Jurisdictional Allegations**

Paragraph 11 of the Amended Complaint contains a variety of misstatements with respect to TSI's purported contacts with the state of New York.  (Swank Aff. ¶ 18; see generally Amend. Cmplt. ¶ 11, at pp. 3-4).  Specifically, contrary to Plaintiff's suggestion, TSI's employees did not travel to New York either to negotiate, or to terminate, the one year contract that is the subject of this action.  (Swank Aff. ¶ 18; see generally Amend. Cmplt. ¶ 11, at p. 4).  Also contrary to Paragraph 11, TSI's employees do not travel to New York to install its products, machinery or equipment.  (Swank Aff. ¶ 19; see Amend. Cmplt. ¶ 11, at p. 4).  Indeed, during the 2007 contract, installation and start-up work for Plaintiff's New York customers was not performed by TSI's employees, but by Harbour Mechanical, a firm hired by Plaintiff.  (Id.).  In addition, TSI's Oklahoma employees did not attend social and other functions hosted by Plaintiff at any time in 2007.  (Swank Aff. ¶ 21; see Amend. Cmplt. ¶ 11, at p. 4).

Moreover, TSI has not entered into contracts to deliver its products in New York.  (Swank Aff. ¶ 20; see Amend. Cmplt. ¶ 11, at p. 4).  Rather, as set forth above, TSI sells its equipment F.O.B. Oklahoma and does not deliver its products outside of Oklahoma.  (Id.).

## ARGUMENT

### I.

### PLAINTIFF'S AMENDED COMPLAINT MUST BE
### DISMISSED FOR LACK OF PERSONAL JURISDICTION

In a diversity action, the court resolves the question of lack of personal jurisdiction under the law of the forum state in which the district court sits.  Robinson v.

Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). In that regard, the Court

conducts a two-part analysis: first, the Court determines whether there is jurisdiction over

the defendant under the relevant forum state's laws, and, if such jurisdiction exits, the

Court then determines if the exercise of such jurisdiction comports with federal due

process requirements. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171

F.3d 779, 784 (2d Cir. 1999); Caulfield v. Imagine Advisors, Inc., No. 07 Civ. 1257,

2007 WL 4615504, at *5 (S.D.N.Y. Dec. 27, 2007).

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff "bears the burden

of establishing that the court has jurisdiction over the defendant." Bank Brussels

Lambert, 171 F.3d at 784; Scott v. Nat'l Ass'n for Stock Car Racing, Inc., No. 06 Civ.

6029, 2008 WL 217049 at *5, (S.D.N.Y. Jan. 17, 2008). While a plaintiff's allegations

are afforded liberal construction, in determining whether or not a plaintiff has met its

burden, courts are discouraged from drawing "argumentative inferences" in the plaintiff's

favor. Robinson, 21 F.3d at 507 (citation omitted).

Here, Plaintiff's jurisdictional allegations in its Amended Complaint can not and

do not meet Plaintiff's burden to establish the Court's personal jurisdiction over TSI. In

addition to there being no "traditional bases" for general jurisdiction[4], there are no

grounds under New York's long-arm statute upon which the Court may exercise personal

jurisdiction over TSI. In particular, the Amended Complaint's allegations fail to establish

either that this suit arises out of business TSI transacted in New York, or that the suit

arises out of TSI's contracting to supply goods in New York. All of TSI's actions which

---

[4]  Plaintiff has not alleged that TSI engaged in such a systematic and continuous course of conduct to
subject TSI to general jurisdiction under N.Y. C.P.L.R. § 301. Nor has Plaintiff alleged any of the other
"traditional bases" for jurisdiction under Section 301 such as "physical presence, consent, [or] domicile . . .
." Caulfield, 2007 WL 4615504, at *5. As such, the jurisdictional analysis focuses solely on whether
Plaintiff has alleged a sufficient basis for long-arm jurisdiction under C.P.L.R. § 302(a)(1).

form the basis for Plaintiff's breach of contract claims took place in Oklahoma, on a

contact made in Oklahoma, signed by TSI in Oklahoma, performed by TSI in Oklahoma,

and to which Oklahoma law expressly applies.  No part of this dispute concerns a single

act by TSI in New York.

> A.    TSI Did Not Transact Business Within
>        New York Nor Contract To Supply Goods In The
>        State Within The Meaning Of C.P.L.R. § 302(a)(1)

Under Section 302(a)(1) -- the sole subsection of New York's long-arm statute

upon which Plaintiff relies -- "long-arm jurisdiction over a nondomiciliary exists where

(i) a defendant transacted business within the state and (ii) the cause of action arose from

that transaction of business.  If either prong of the statute is not met, jurisdiction cannot

be conferred under CPLR 302(a)(1)."  Johnson v. Ward, 4 N.Y.3d 516, 519, 829 N.E.2d

1201, 1202, 797 N.Y.S.2d 33, 34 (2005); accord Best Van Lines, Inc. v. Walker, 490

F.3d 239, 246 (2d Cir. 2007); Merck &Co. v. Mediplan Health Consulting, Inc., 425 F.

Supp. 2d 402, 419 (S.D.N.Y. 2006).

In order to establish personal jurisdiction under the "transacting business"

provision of Section 302(a)(1), Plaintiff must demonstrate that TSI "purposefully

avail[ed] [itself] of the privilege of conducting activities within New York such that

bringing [TSI] before a New York court does not offend due process . . . ."  Kronisch v.

United States, 150 F.3d 112, 130 (2d Cir. 1998) (internal quotations omitted); see also

Best Van Lines, Inc., 490 F.3d at 246 ("New York courts define 'transact[ing] business'

as  purposeful activity - 'some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws.'") (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d

377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967)).  To determine whether a defendant has transacted business within the state, New York courts must consider the "totality of circumstances concerning the party's interactions with, and activities within, the state." Bank Brussels Lambert, 171 F.3d at 787.

In this case, Plaintiff can not establish that TSI engaged in any purposeful activity in New York in connection with the purported breach of contract at issue.  TSI is neither registered nor authorized to do business in New York, and TSI has no offices, no employees, no agents, no property, no addresses, no telephone numbers, no post office boxes, nor any bank accounts in New York.  TSI does not advertise its equipment in New York.  TSI does not ship its equipment into New York; rather, if a New York customer's order is accepted by TSI in Oklahoma, the equipment is sold "F.O.B." Oklahoma.

Furthermore, the contract at issue here is not for the supply goods in New York, but rather for Plaintiff to obtain orders from its New York customers for TSI's products.  Under the Contract, Plaintiff solicits its customers for potential orders of TSI's products.  Potential orders are then sent to Oklahoma for TSI's review, consideration and approval.  In those cases where TSI approves an order, the equipment shipped thereunder is delivered "F.O.B." Oklahoma, where title and risk of loss pass to the purchaser.  TSI does not send its employees to New York to install equipment sold to Plaintiff's customers, and only once in the past year sent one of its 280 employees to New York on a service call to Plaintiff's customer, a visit having nothing whatever to do with the breach of contract dispute here.

Moreover, as Plaintiff concedes, TSI's short-lived termination of the contract took place in Oklahoma.  There, TSI executives determined to terminate the agreement, then

issued a letter effecting the termination from Oklahoma, and later issued another letter

from Oklahoma rescinding the termination. As of the commencement of this suit, no

meeting of any kind took place in New York regarding the termination or the rescission

of same.

Controlling authority from both the New York Court of Appeals and from the

Second Circuit, hold that a nondomiciliary manufacturer such as TSI, whose relevant

conduct all takes place in a foreign state or country, is not "transacting business" in New

York with its local representative/distributor, for purposes of a breach of contract action

between them. See McKee Electric Co., 20 N.Y.2d at 382, 229 N.E.2d at 607, 283

N.Y.S.2d at 37; Kramer v. Vogl, 17 N.Y.2d 27, 215 N.E.2d 159, 267 N.Y.S.2d 900

(holding that a non-domiciliary defendant's sale of merchandise F.O.B. various European

ports through a New York distributor did not constitute "transacting business" in New

York since defendant themselves did not sell or advertise in the state); McShan v. Omega

Louis Brandt Et Frere, S.A., 536 F.2d 516, 519 (2d Cir. 1976) (same). See also

McGowan v. Smith, 52 N.Y.2d 268, 271, 419 N.E.2d 321, 322, 437 N.Y.S.2d 643, 645

(1981) (long-arm jurisdiction under Section 302(a)(1) does not extend to non-

domiciliaries "who merely ship goods into the State without ever crossing its borders").[5]

Indeed, McKee Electric Co., is precisely on point. There, a New York based

representative entered into a contract with an Illinois manufacturer pursuant to which the

New York representative acted as an independent distributor of the manufacturer's

products in New York. In that breach of contract case, the defendant was,

---

[5]   The fact that TSI develops products in Oklahoma, at Plaintiff's request, to comply with the requirements of
New York City's Building Code is utterly irrelevant to the jurisdictional analysis under Section 302(a)(1);
(See Amend. Cmplt. ¶ 11, at pp. 3-4). TSI obviously expected that Plaintiff's New York customers would
order TSI's equipment and that such equipment would eventually make its way into the state (F.O.B.
Oklahoma, of course).

> [A] manufacturer of sonic equipment in Illinois, and is not
> qualified to do business in New York, has no place of
> business here, no officers, agents, or employees, no
> property either real or personal, and no telephone listing.
> Its products are sold in New York by a number of
> distributors, all of whom are independent businessmen
> selling the equipment of other manufacturers as well as that
> of [defendant].  Less than 5% of [defendant's] total sales
> are made to its distributors in New York, and when
> distributors wish to order its products, they mail their
> orders to Chicago, where the orders are accepted or
> rejected.  If an order is accepted, the goods are shipped by
> [defendant] f.o.b. Chicago.

McKee Electric Co., 20 N.Y.2d at 379, 229 N.E.2d at 605, 283 N.Y.S.2d at 35.

In addition, in McKee Electric Co., as here, the "distributorship agreement was

for only one year, and has been renewed in subsequent years, according to [defendant], in

Illinois, until the alleged breach occurred [ ] and which gave rise to this suit." 20 N.Y.2d

at 379-80, 229 N.E.2d at 606, 283 N.Y.S.2d at 36.  Furthermore, there as here,

> [Defendant] wrote a letter [ ] terminating [plaintiff's]
> distributorship and informing [plaintiff] that [defendant]
> was ceasing to supply it with [defendant's] products, except
> as to pending orders. . . . There is no question but that the
> breach took place, even as alleged by plaintiff, in Illinois
> when [defendant] sent the letter [ ] to [plaintiff] notifying it
> that its distributorship was thereby terminated.

McKee Electric Co., 20 N.Y.2d at 380-81, 229 N.E.2d at 606, 283 N.Y.S.2d at 36-37.

In addition, unlike this case, in McKee Electric Co., the parties had a meeting in

New York, in an effort to resolve their dispute prior to suit.  Despite that purposeful

conduct by defendant in New York, the Court of Appeals held that defendant's contacts,

> [R]ather than being minimal, were so infinitesimal, . . ., that
> jurisdiction of the New York courts cannot be sustained.
> Otherwise, every corporation whose officers or sales
> personnel happen to pass the time of day with a New York
> customer in New York runs the risk of being subjected to
> the personal jurisdiction of our courts.

McKee Electric Co., 20 N.Y.2d at 380-81, 229 N.E.2d at 606, 283 N.Y.S.2d at 36-37

(internal citations omitted).  The Court of Appeals went on to highlight:

> In our enthusiasm to implement the reach of the long-arm
> statute (CPLR 302), we should not forget that defendants,
> as a rule, should be subject to suit where they are normally
> found, that is, at their pre-eminent headquarters, or where
> they conduct substantial general business activities.  Only
> in a rare case should they be compelled to answer a suit in a
> jurisdiction with which they have the barest of contact.

20 N.Y.2d at 383, 229 N.E.2d at 607-08, 283 N.Y.S.2d at 38.  In sum, none of Plaintiff's

allegations of TSI's purported limited contacts with New York, even if credited as true,

qualify as "transacting business" within the meaning of New York's long-arm statute.

Likewise, although one of TSI's employees visited New York on one occasion in

2007, his visit was for the sole the purpose of servicing equipment distributed to one of

Plaintiff's customers[6], and, according to this Court, such an infrequent and isolated event

is certainly not grounds for invoking jurisdiction pursuant to Section 302(a)(1).  Chertok

v. Ethyl Corp. of Canada, Ltd., 341 F. Supp. 1251, 1256 (S.D.N.Y. 1972) (dismissing the

complaint for lack of personal jurisdiction noting that defendant did not "purposely avail

itself of the privilege of conducting activities in New York" despite its interactions with

the state).  In Chertok, the court held that defendant's three visits to New York, including

one meeting with Plaintiff where the terms of their finder's fee contract were discussed

and one social visit with Plaintiff, were "insufficient" to sustain jurisdiction pursuant to

Section 302(a)(1).  Id. at 1253-54; see also A.I.L., a Div. of Cutler-Hammer, Inc. v.

---

[6]  Contrary to the allegations in the Amended Complaint, TSI's employees did not travel to New York
during the term of the Contract for social engagements nor to install its equipment.  In fact, during the
Contract term, installation and start-up work for Plaintiff's New York customers was performed by a third-
party entity known as Harbour Mechanical.  (Compare Amend. Cmplt. ¶ 11, at p. 4 with Swank Aff. ¶¶ 19,
21).

Symetrics Indus., Inc., 360 F. Supp. 1138, 1140 (E.D.N.Y. 1973) (noting that visits by defendant's representatives after the execution of the contract did not constitute a "substantial contact" with New York necessary to confer jurisdiction).

Furthermore, TSI neither negotiated nor executed the Contract in New York. (Swank Aff. ¶¶ 12, 19). Rather, the Contract, which expressly states that it was "entered into in the State of Oklahoma" and is governed by the laws of that state, was prepared by TSI employees in Oklahoma and executed by TSI's representative in Oklahoma. (Swank Aff. ¶ 12). Indeed, Plaintiff's Amended Complaint acknowledges that the Contract was "written solely by [TSI]." (Amend. Cmplt. ¶ 22, at p. 6). In addition, Plaintiff's execution of its copy of the Contract in New York before transmitting it for signature in Oklahoma, is immaterial because Plaintiff's actions in New York may not be imputed to TSI. McShan, 536 F.2d at 518; Chertok, 341 F. Supp. at 1255 (citing Glassman v. Hyder, 23 N.Y.2d 354, 362, 296 N.E.2d 259, 263, 296 N.Y.S.2d 783, 789 (1968)).

Accordingly, for the foregoing reasons, Plaintiff can not establish that TSI transacted business in New York under C.P.L.R. § 302(a)(1), requiring dismissal of the Amended Complaint.

B    Plaintiff's Causes Of Action Do Not Arise Out
Of TSI's Minimal Connection With New York State

The second, and equally fundamental, element necessary to establish personal jurisdiction under Section 302(a)(1) is that Plaintiff's claims must "arise out of" TSI's activities in New York. Kronisch, 150 F.3d at 130 (citing McGowan v. Smith, 52 N.Y.2d 268, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981)); McShan, 536 F.2d at 518. Under New York law, "for a cause of action to arise out of a party's activities in New York, there must be an articulable nexus, or a substantial relationship, between the claim asserted and

16

the actions that occurred in New York. Kronisch, 150 F.3d at 130; McGowan, 52 N.Y.2d at 273, 419 N.E.2d at 323, 437 N.Y.S.2d at 645 (stating that absent proof of a sufficient relationship between plaintiff's claims and defendant's business contacts with the state, defendant is not subject to the jurisdiction of New York courts). Plaintiff's Amended Complaint fails this test too.

Plaintiff's claims are for breach of contract. It is undisputed that the Contract was prepared by TSI in Oklahoma, signed by TSI in Oklahoma and governed by the laws of Oklahoma. Moreover, TSI's alleged breaches all arise out of TSI's termination of the Contract, which was effected by TSI's executives in Oklahoma. As none of TSI's conduct with respect to its purported breach occurred in New York, there is no nexus or substantial relationship between Plaintiff's claims and any conduct by TSI in New York. The Amended Complaint must be dismissed on this basis as well.[7]

## II.

### ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF OKLAHOMA PURSUANT TO 28 U.S.C. § 1404(A)

Even assuming, arguendo, that this Court could assert personal jurisdiction over TSI, the Court should transfer this case to the Northern District of Oklahoma, as this action would be more appropriately tried in that forum. Not only does TSI reside in the Northern District of Oklahoma, but all of TSI's witnesses in connection with this action live and work there, all of TSI's evidence is located there, the events giving rise to

---

[7]    Moreover, the exercise of personal jurisdiction over TSI would not comport with due process. As the Second Circuit suggests in Bank Brussels Lambert, the secondary analysis to determine whether the exercise of personal jurisdiction complies with federal due process is only required if jurisdiction is found to exist under the forum state's laws. 171 F.3d at 784. Since there is no statutory basis for jurisdiction under New York's long-arm statute, the "federal law" analysis need not be conducted in the present case. Id.; Best Van Lines, Inc. v. Walker, 490 F.3d 239, 244 (2d Cir. 2007) ("If jurisdiction is statutorily impermissible, of course, we need not reach the question of its constitutionality."); Kramer, 17 N.Y.2d at 32, 215 N.E.2d at 162, 267 N.Y.S.2d at 904.

Plaintiff's claims were initiated and carried out there, and the Contract expressly provides that it was "entered into in the State of Oklahoma" and is governed by Oklahoma law. (See Swank Aff. ¶¶ 3-4, 7, 12, 15-17; see also Ex. 1, ¶ 12, at p. 12).

Federal law grants district courts the discretion to transfer a civil case to an alternative and more appropriate forum.  28 U.S.C. § 1404(a) (2008) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); Flaherty v. All Hampton Limousine, Inc., No. 01 Civ. 9939, 2002 WL 1891212, at *1 (S.D.N.Y. Aug. 16, 2002); Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 94 (S.D.N.Y. 1995).  The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Id.  In deciding whether to transfer venue upon a motion pursuant to Section 1404(a), the court must consider: "(1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer."  Flaherty, 2002 WL 1891212, at *1.

Here, Plaintiff could have initiated its lawsuit in the Northern District of Oklahoma and the interests of justice and convenience would be best served by transferring the case to that forum.

      A.    This Action Could Have Been Initiated
            In The Northern District of Oklahoma

Pursuant to 28 U.S.C. § 1391(a), in an action based solely on diversity of citizenship, except as otherwise provided by law, venue is *only* proper in,

> (1) a judicial district where any defendant resides, if all
> defendants reside in the same State, (2) a judicial district in
> which a substantial part of the events or omissions giving
> rise to the clam occurred, or a substantial part of property
> that is the subject of the action is situated, or (3) a judicial
> district in which any defendant is subject to personal
> jurisdiction at the time the action is commenced, if there is
> no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  Here, venue would have been proper within the Northern District of

Oklahoma under subpart (1) or (2).

> B.    This Action Should Be Transferred in the
>       <u>Interests of Convenience and Justice</u>

In light of the fact that the present action could have been initiated in the Northern

District of Oklahoma, this Court's decision whether or not to transfer the case "depends

on the balance of convenience and justice." <u>Flaherty</u>, 2002 WL 1891212, at *1.  As part

of its analysis, the Court may consider any number of factors, including:

> (1) the convenience of witnesses; (2) the convenience of
> the parties; (3) the location of relevant documents and the
> relative ease of access to those sources of proof; (4) the
> situs of the operative events in issue; (5) the availability of
> process to compel the attendance of unwilling witnesses;
> (6) the relative means of the parties; (7) the comparative
> familiarity of each district with the governing law; (8) the
> weight accorded a plaintiff's choice of forum; and (9)
> judicial efficiency and the interests of justice.

<u>Flaherty</u>, 2002 WL 1891212, at *2 (quoting <u>Ayala-Branch v. Tad Telecom, Inc.</u>, 197 F.

Supp. 2d 13 (S.D.N.Y. 2002)).  While none of these individual factors is "determinative,"

the court has the discretion "to weigh each factor to reach a fair result."  <u>Flaherty</u>, 2002

WL 1891212, at *2.

Applying these factors to the present case, it is apparent that the Northern District

of Oklahoma is the more convenient and justifiable forum for this action.  As set forth

above: (i) all of TSI's witnesses to the events giving rise to Plaintiff's claims live and

work in Oklahoma; (ii) TSI's offices and documents are in the Oklahoma; (iii) the events

giving rise to Plaintiff's claims, namely the decision to terminate the Contract, was made

in Oklahoma; (iv) one of the key witnesses, Sam Jones, is no longer working for TSI and

therefore TSI cannot procure his appearance in New York; and (v) the Northern District

of Oklahoma is more familiar with Oklahoma law, the governing law in this case. (See

generally Swank Aff. ¶¶ 4, 12, 15-17). In addition, considering the disparity in docket

size and median time intervals for the disposition of cases between the Southern District

of New York and the Northern District of Oklahoma, in the interest of parity of judicial

workloads, the Court should transfer the action to the Northern District of Oklahoma.[8]

As the determinative factors of convenience and justice weigh in favor of

transferring this action, in the event that this Court does not dismiss this action outright, it

should transfer the case to the Northern District of Oklahoma.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that this Court:

(i) dismiss the Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(2); or,

in the alternative, (ii) transfer this action to the United States District Court for the

---

[8]  Defendant respectfully requests that the Court take judicial notice of the Federal Judicial Caseload
Statistics, dated March 31, 2007, available at the official website for the federal judiciary,
http://www.uscourts.gov. The total judicial caseload within the Northern District of Oklahoma is 674
compared to 8,898 in the Southern District of New York. The average time to reach trial in the Northern
District of Oklahoma is 19.0 months compared to 26.3 months in the Southern District of New York.

Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a); and (iii) grant such other
and further relief as this Court deems just and proper.


Dated:  New York, New York
        February 29, 2008

                                    Respectfully submitted,

                                    KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

                                    By _____
                                        David E. Ross
                                        Email: dross@kasowitz.com
                                        Eric D. Herschmann
                                        Email: eherschmann@kasowitz.com
                                        Kimberly A. Horn
                                        Email: khorn@kasowitz.com
                                        1633 Broadway
                                        New York, New York  10019
                                        Telephone:  (212) 506-1700

                                        *Attorneys for Defendant*

21