UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DNT ENTERPRISES, INC.,

                      Plaintiff,

    -against-

TECHNICAL SYSTEMS,
A DIVISION OF RAE CORPORATION,

                      Defendant.
------------------------------------------------------------x

Case No. 07 Civ. 8661 (LLS) (DCF)
ECF CASE

**AFFIDAVIT OF ERIC SWANK**

STATE OF OKLAHOMA   )
                              ) ss:
COUNTY OF MAYES     )

    ERIC SWANK, being duly sworn, deposes and says:

    1.    I am the President and Chief Executive Officer of RAE Corporation, including its division Technical Systems ("TSI"), which contracted with plaintiff DNT Enterprises, Inc. ("DNT"). I have personal knowledge of the facts set forth herein, and can and will testify to such facts if called as a witness.

    2.    I make this affidavit in support of TSI's motion to dismiss plaintiff's amended complaint, filed on January 22, 2008 (the "Amended Complaint"), because TSI is not subject to personal jurisdiction in New York, and, alternatively, because this case should be transferred to the United States District Court for the Northern District of Oklahoma in Tulsa, where TSI is subject to jurisdiction.

### TSI Is An Oklahoma Company Whose Offices, Employees and Operations Are Located Exclusively In Oklahoma

3. TSI specializes in the production of engineered cooling systems which are manufactured in Oklahoma. TSI was first founded and incorporated in Oklahoma in 1971, and has continuously operated in that state since its founding.

4. TSI's only offices and its sole manufacturing facility are located in Pryor, Oklahoma. Together with its parent RAE Corporation, TSI has about 280 employees, all of whom live and work in Oklahoma.[1] TSI does not have any offices, employees or operations outside the state of Oklahoma.

5. TSI sells its equipment through independent contractors such as DNT. Such independent contractors are not TSI's employees, and they typically represent the lines of many firms, including those that compete with TSI. TSI does not control any aspect of such independent contractors' operations, or those of such entities' employees.

6. With a typical independent contractor "representative" such as DNT, TSI and the contractor enter into a written representative contract governed by Oklahoma law, pursuant to which the independent contractor is authorized to work with *their* customers in *their* respective states and locales, to obtain offers to purchase TSI's equipment for sale and delivery in Oklahoma. On occasion, the independent contractor will offer to purchase TSI's equipment for their own account in Oklahoma, and resell it to its customers. In all events, TSI accepts or rejects any such orders in Oklahoma, and TSI sells its equipment only "FOB Oklahoma," such that title to, and the risk of loss of, the equipment sold passes to the purchaser in Oklahoma.

---

[1] With the exception of a single non-TSI employee who works out of his home in Boise, Idaho.

2

**TSI Is Not Doing Business In New York, And Is Not
Transacting Business In New York In Connection With The DNT Contract**

7.  TSI does not do business in New York. TSI is not registered nor authorized to do business in New York, and has no agent for service of process there. TSI has never been served with process in New York, including in this case. TSI has never been sued (or initiated a lawsuit) in New York.

8.  TSI has no offices, no employees, no property, no agents, no telephone numbers, no addresses, no post office boxes, nor any bank accounts in New York. TSI does not advertise for business in New York.

9.  TSI's Oklahoma employees visit the state of New York only on extremely rare occasion. For example, in 2007, only one of TSI's employees made a single sales trip to New York, and that trip was to meet with a New Jersey based representative, and was completely unrelated to DNT or DNT's New York customers. And, in connection with equipment sold to DNT's customers, in 2007 a single TSI employee made one service call to New York. Neither of those two limited trips to New York had anything whatsoever to do with the contract termination that is the subject of this case.

10. Furthermore, in 2007, the total sales of TSI's equipment to DNT's New York based customers represented less than 3% of the company's national sales.

**The One-Year Contract At Issue In This Case**

11. Over the years, TSI has entered into separate one year contracts with DNT, pursuant to which TSI has appointed DNT as its representative in several counties in New York for the solicitation of orders from DNT's customers. The one-year contract that is the subject of this case was entered into March 2, 2007 (the "Contract"). A true and correct copy of the Contract is attached hereto as "Exhibit 1."

3

12. The Contract was prepared by TSI in Oklahoma, and as recited therein, the Contract was "entered into in the State of Oklahoma." See Ex. 1, ¶ 12, at p. 4. TSI's representative signed and thereby accepted the Contract at TSI's offices in Oklahoma.

13. Pursuant to the terms of the Contract, DNT is an independent contractor of TSI. See Ex. 1, ¶ 6, at p. 3. As such, DNT is expressly prohibited from making any representations on behalf of TSI without its prior written approval and/or implying, either directly or indirectly, that DNT is an agent of, or has any authority to bind, TSI. Id. Under the Contract, DNT is responsible for soliciting inquiries and procuring orders for TSI's products from DNT's customers. See Ex. 1, ¶ 2, at p. 2.

14. Upon receipt of written orders from DNT's customers, DNT is required to send the orders to TSI in Oklahoma. Thereafter, acting exclusively in Oklahoma, TSI evaluates the orders to determine whether it is inclined to accept them. All orders are subject to acceptance by TSI in Oklahoma, and TSI reserves the right to evaluate the credit worthiness of any DNT customer and to reject any order. See Ex. 1, ¶ 5, at p. 3. In cases where the order from DNT is accepted by TSI in Oklahoma, the equipment that TSI agrees to sell is sold "F.O.B. Oklahoma."

**The Dispute That Forms The Basis Of This Suit**

15. On or about September 21, 2007, Kevin Trowhill, TSI's Vice President, whose office is in Pryor, OK, sent a letter from Oklahoma to DNT canceling the Contract (the "Cancellation Letter") pursuant to the cancellation provisions thereof. As permitted by the Contract, the early termination thereof was based on the unsatisfactory performance of DNT during the contract term. Prior to issuing the termination letter, three TSI executives in Oklahoma participated in discussions regarding DNT's failing

performance, namely, me, Mr. Trowhill and Sam Jones (who is now retired from TSI and continues to reside in Oklahoma).

16. Less than two weeks later, on or about October 4, 2007, Mr. Trowhill sent a follow-up letter from Oklahoma to DNT rescinding TSI's prior cancellation of the Contract, and assuring DNT that TSI would continue to honor the terms of the Agreement, which it has done. The determination to rescind the termination was made in Oklahoma by me and Mr. Trowhill. Thereafter, TSI continued to perform all of its obligations under the Contract, including the continued support of DNT's efforts to obtain orders from its customers. For the record, TSI did not breach the Contract in any respect, and TSI denies that the temporary termination caused any damage to DNT.

17. This purported dispute turns on whether TSI was properly within its rights to terminate the Contract when it did so. That termination, and the subsequent rescission, were all accomplished at our offices in Pryor, OK. The determination to terminate, and/or to subsequently rescind the termination, were made by me, Mr. Trowhill, and Mr. Jones. Each of us live and work in Oklahoma. All of our business records associated with this DNT relationship are located in Oklahoma. Having to travel to New York, where we have no offices or employees would be extremely inconvenient and burdensome to TSI and its employees. As Mr. Jones is a former employee, TSI can not procure his appearance in New York.

**DNT's Amended Complaint Misstates Numerous Jurisdictional Allegations**

18. Paragraph 11 of the Amended Complaint contains a variety of misstatements with respect to TSI's purported contacts with the state of New York. Specifically, contrary to Paragraph 11 of the Amended Complaint, TSI's employees did

not travel to New York either to negotiate, or to terminate, the one year contract that is the subject of this matter.

19.    Also contrary to Paragraph 11 of the Amended Complaint, TSI's employees do not travel to New York to install its products, machinery or equipment. Indeed, during the 2007 contract, installation and start-up work for DNT's New York customers was <u>not</u> performed by the Company's employees, but by Harbour Mechanical, a company hired and paid for by DNT.

20.    In addition, TSI has not entered into contracts to deliver its products in New York. Rather, as set forth above, TSI sells its equipment F.O.B. Oklahoma and does not deliver its products outside of Oklahoma.

21.    Moreover, TSI's Oklahoma employees did not attend social and other functions hosted by DNT at any time in 2007.[2]

_____
Eric Swank

Sworn to before me this
28th day of February 2008.

_____
Notary Public

EXPIRES: 3-11-11
# 03003253

---

[2]  TSI does not refute the allegation that some of its products were developed in Oklahoma, at DNT's request, to comply with the requirements of New York's applicable codes and regulations. Obviously, TSI expected when it contracted with DNT as its independent representative for the New York region, that DNT's New York customers would order TSI's equipment (FOB Oklahoma, of course).