UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X        Case No.:07 Civ. 8661 (LSS)
DNT ENTERPRISES, INC.,                                         ECF CASE

                       Plaintiff,

      -against-

TECHNICAL SYSTEMS,
A DIVISION OF RAE CORPORATION,

                     Defendant.
------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS OR,
## <u>ALTERNATIVELY, TRANSFER THE CASE</u>

Respectfully submitted,

Samuel E. Kramer, Esq.
225 Broadway - Suite 3300
New York, New York 10007
(212) 285-2290
*Attorney for Plaintiff, DNT Enterprises, Inc.*

Table of Contents

Page

Table of Contents                                                                                           I

Table of Authorities                                                                                        ii

PRELIMINARY STATEMENT:                                                                        1

BACKGROUND:                                                                                            3

    Plaintiff Successfully Represents Defendant Continuously Since 1996      3
    Defendant's Repeated Contacts With New York                              3
    Defendant Enjoys the Benefits and Protections of New York                4
    Defendant Purports to Terminate the 2007 Representation Agreement        4
    Plaintiff Sustains Damages By Reason of Defendant's Breach of Contract   5

ARGUMENT:

POINT ONE:                                                                                                 6

DEFENDANT AVAILED ITSELF OF THE BENEFITS
AND PROTECTIONS OF NEW YORK LAW WITH RESPECT
TO THE DISPUTE WHICH IS THE SUBJECT OF THIS CASE
AND CONTRACTED TO DELIVER GOODS WITHIN THE STATE:                        6

    Defendant Was Physically Present In New York                             7

    Defendant Invoked - And Continues to Invoke -
      The Benefits and Protections of New York                            8

    Recent Court of Appeals Decisions
      Support the Imposition of Long Arm Jurisdiction
      Under the Facts of this Case                                        9

    Goods Were Supplied in New York                                          13

POINT TWO:

THE DEFENDANT'S MOTION FAILS
 TO SUPPORT THE PRAYER FOR ALTERNATIVE RELIEF                              15

CONCLUSION:                                                                                           17

Table of Authorities:

Case Citation:                                                          Page:

*Ayala Branch* v. *Tad Telecom, Inc.*,
 197 F. Supp.2d 13 (S.D.N.Y. 2002)                                      15, 16

*Cavalier Label Co., Inc.* v. *Polytam, Ltd.*,
 687 F.Supp. 872, 877 (S.D.N.Y.1988)                                    14

*Deutsche Bank* v. *Montana Board of Investors*,
 7 NY3d 65, 818 N.Y.S.2d 164 (2006)                                     9, 10

*Ehrenfeld* v. *Mahfouz*,
 9 N.Y.2d 501, 851 N.Y.S.2d 381 (2007)                                  12, 13

*Ferrante Equipment Co.* v. *Lasker-Goldman Corp.*,
 26 N.Y.2d 280, 309 N.Y.S.2d 913(1970)                                  7

*Feigenbaum* v. *Marble of America, Inc.*,
 735 F.Supp. 79 (S.D.N.Y. 1990)                                         8

*Finest Fruits, Inc.* v. *Bertuca*,
 714 F.Supp. 94 (S.D.N.Y.1989)                                          14

*Fischbarg* v. *Doucet*,
 9 NY3d 375, 849 N.Y.S.2d 501 (2007)                                    10, 12

*Frene N.V.* v. *Kmart Corp.*,
 Not Reported in F.Supp.2d,
 1998 WL 427688 * 3 (S.D.N.Y.1998)                                      16

*McKee Elec. Co.* v. *Rauland-Borg Corp.*,
 20 N.Y.2d 377, 283 N.Y.S.2d 34 (1967)                                  8

*Parke-Bernet Galleries* v. *Franklyn*,
 26 N.Y.2d 13, 308 N.Y.S.2d 337 (1970)                                  9

Statutes:

CPLR § 302(a)(1)                                                        7 (quoted)
F.R.Civ.P. 12(b)(2)                                                     6
28 U.S.C. 1404(a)                                                       15

Samuel E. Kramer, Esq.
225 Broadway - Suite 3300
New York, New York 10007
(212) 285-2290
*Attorney for Plaintiff, DNT Enterprises, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X          Case No.:07 Civ. 8661 (LSS)
DNT ENTERPRISES, INC.,                                            ECF CASE

                          Plaintiff,

      -against-

TECHNICAL SYSTEMS,
A DIVISION OF RAE CORPORATION,

                          Defendant.
-------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS OR,
## <u>ALTERNATIVELY, TRANSFER THE CASE</u>

### <u>PRELIMINARY STATEMENT:</u>

       This Memorandum of Law is submitted on behalf of plaintiff, DNT Enterprises Inc.,

in opposition to the motion by defendant, Technical Systems, a Division of RAE Corporation, to

dismiss plaintiff's Amended Complaint pursuant to Rule 12 (b)2 of the Federal Rules of Civil

Procedure ("F.R.Civ.P.") or, alternatively, to transfer the case to the Northern District of Oklahoma,

pursuant to 28 U.S.C.§1404(a) ("Defendant's Motion").

       Neither the allegations set forth in the affidavit of defendant's President, Eric Swank,

duly sworn to February 28, 2008 (the "Swank Aff.") – many of which are disputed in the affidavit

of plaintiff's President, Neil Thakker, duly sworn to the 1st day of April, 2008 (the "Thakker Aff.")

– nor the arguments and citations set forth in the "Memorandum of Law in Support of [Defendant's

Motion]" ("Defendant's Memo"), the jurisprudence promulgated by the New York Court of Appeals holds that when a foreign corporation seeks to consummate a New York transaction or to invoke New York's laws – such as those which are identified and described in the Thakker Aff. – and there is a substantial relationship between the transaction and the claim asserted, the assertion of long-arm jurisdiction pursuant to §302(a)(1) of the New York Civil Practice Law and Rules ("CPLR") is proper. Moreover, defendant caused goods to be delivered into New York State.

In this case, the indisputable record demonstrates that throughout the twelve consecutive years that plaintiff was the exclusive manufacturer's representative of defendant – and including, as well, the period encompassed by the final year of that relationship – defendant inserted itself into New York inserting itself into New York by calling, writing and e-mailing and enjoyed the benefits and protections of New York law with respect to the exclusive representation agreement which is the subject of this case, and as such, under recently decisions of the Court of Appeals, is susceptible to long arm jurisdiction in New York for damages arising from defendant's unlawful termination of the exclusive representation agreement on September 21, 2007.

Simply put, neither the allegations set forth in the Swank Aff., nor the authorities upon which Defendant's Memo relies support either dismissal based on absence of personal jurisdiction over defendant or, alternatively, transfer of this case to the Northern District of Oklahoma. Indeed, with respect to the alternative request for relief, defendant fails to identify any legal basis, including, most especially the convenience of third party witnesses – all of whom are in New York or New Jersey – which would justify a transfer of this case. Accordingly, Defendant's Motion should be denied in all respects, and plaintiff should be granted such other and further relief as the Court deems just, including the imposition of costs and attorney's fees.

-2-

## BACKGROUND:

The facts herein are set forth in the Thakker Aff., and may be summarized as follows:

### Plaintiff Successfully Represents Defendant Continuously Since 1996:

1.      Defendant is a manufacturer of Heating, Ventilation, Air Condition or Refrigeration ("HVACR") machinery, products and equipment; plaintiff has been defendant's exclusive representative in the New York Metropolitan Area pursuant to twelve consecutive annual agreements, commencing in 1996 and, through September 21, 2007, had achieved sales of $17 Million of defendant's products, including close to $1 Million in 2007, at which time defendant breached the parties' agreement by, without cause, purporting to terminate same (Thakker Aff., ¶¶ 2, 3, 7, 9, 11-13, Exhibits B and C). The great bulk of these sales were achieved by plaintiff's purchase of defendant's HVACR machinery, products and equipment in New York (Thakker Aff.,¶ 13, ¶ 38, Exhibits C and S).

### Defendant's Repeated Contacts With New York:

2.      Throughout the parties' relationship, defendant's officers and employees repeatedly visited New York personally in connection with the service and installation of defendant's HVACR machinery, products and equipment, to promote its products (Thakker Aff., ¶28(a) through (e) and ¶30 Exhibits K, L, M, N, and O) and social occasions in support of plaintiff's exclusive representation of defendant (Thakker Aff., ¶29). In addition, defendant communicated with plaintiff, and inserted itself into New York, by sending "hundreds, if not thousands of e-mails" during the course of plaintiff's exclusive representation of defendant, including, specifically hundreds of e-mails sent during by defendant to plaintiff during the year which terminated on or about March 2, 2008 (Thakker Aff., ¶ 36, Exhibit R).

-3-

**Defendant Enjoys the Benefits and Protections of New York:**

3.        Most particularly, defendant enjoyed the benefits and protections of New York by applying for and obtaining from the New York City Building Department, in accordance with the requirements of the Administrative Code of the City of New York, MEA (material and equipment acceptance) numbers, without which defendant's HVACR machinery, products and equipment could not have been sold in New York City.  Likewise, defendant – with the vital assistance of plaintiff – manufactured products designed to meet the highly particular and specific requirements of the "Sound Code" and the "Refrigeration Code" (Thakker Aff., ¶¶ 32-35, Exhibits P and Q).  The MEA numbers remain in use to this day, and defendant's HVACR machinery, products and equipment, continues to meet the requirements of the New York City Administrative Code; in connection with the 2007 representation agreement, specifically, defendant continued to enjoy the benefits and protections of the New York laws.

**Defendant Purports to Terminate the 2007 Representation Agreement:**

4.        Plaintiff was consistently recognized as one of defendant's top performers (Thakker Aff., ¶¶ 14-15, Exhibits D and E).  Indeed, as of September 21, 2007, had achieved sales approaching $1 Million for the year 2007, and, by that date had placed with defendant additional bids for projects approaching $4 Million  (Thakker Aff. ¶ 18, Exhibit C and G). Yet, on September 21, 2007, immediately subsequent to a personnel change (Thakker Aff., ¶¶16-17, Exhibit F), defendant terminated the exclusive representation agreement, due to continue to March 2, 2008, without any cause (as required by the representation agreement; Thakker Aff.,  ¶19; *see* Swank Aff., Exhibit A) and stated only: " I feel it is in our best interest to pursue a different direction for representation" (Thakker Aff., ¶20, Exhibit H).

-4-

**Plaintiff Sustains Damages By Reason of Defendant's Breach of Contract:**

5.          Although defendant purported to reinstate the representation agreement several weeks

later, plaintiff had been damaged within the insular community of engineers, architects and

builders who make decisions respecting the selection of HVACR equipment in the New

York Metropolitan Area, as plaintiff will prove at trial by calling witnesses within that

community ( Thakker Aff., ¶¶ 42-44), thus negating the alternative relief sought by defendant

of transferring the case to the Northern District of Oklahoma.

6.          Moreover, during the period subsequent to September 21, 2007, while the 2007

representation agreement was presumably still in effect, defendant acted in bad faith "by

increas[ing] its prices far above those theretofore set for the same or substantially identical

products" (Thakker Aff., ¶ 26, Exhibit I) and by "failing to provide timely pricing and

information regarding delivery, lead-times and closing dates" (Thakker Aff., ¶ 42, Exhibit

I).  Likewise, subsequent to the termination date of the 2007 representation agreement (*i.e.,*

on or about March 2, 2008)  –  which occurred subsequent to the service of the amended

complaint which defendant seeks to dismiss (Thakker Aff., Exhibit A) – defendant has failed

to give any indication that it will "honor all of its commitments and obligations to plaintiff"

with respect to the approximately one hundred (100) projects to defendant for price quote

and/or design as of March 2, 2008 (Thakker Aff., ¶ 27, Exhibit J), in the absence of which

plaintiff shall be damaged and will be required to seek additional or plenary relief from this

Court, in addition to the damages for which it has already commenced suit.

**ARGUMENT:**

**POINT ONE:**

**DEFENDANT AVAILED ITSELF OF THE BENEFITS
AND PROTECTIONS OF NEW YORK LAW WITH RESPECT
TO THE DISPUTE WHICH IS THE SUBJECT OF THIS CASE
AND CONTRACTED TO DELIVER GOODS WITHIN THE STATE:**

Defendant moves, pursuant to Rule 12(b)2 of the Federal Rules of Civil Procedure to dismiss this action based on the alleged absence of personal jurisdiction. Defendant's Memo, at p. 9, accurately states; "In a diversity action, the court resolves the question of lack of personal jurisdiction under the law of the forum state in which the district court sits. Robinson v. Oveseas Military Sales Corp., 21 F.3d. 502, 510 (2d Cir. 1994)." Yet, Defendant's Memo, at pp. 10-11, then argues that "there are no grounds under New York's long-arm statute upon which the Court may exercise jurisdiction of TSI [*i.e.,* defendant] ... All of TSI's actions which form the basis for Plaintiff's brach of contract claims took place in Oklahoma ... No part of this dispute concerns a single act by TSI in New York." Likewise, the Swank Aff., at ¶¶ 7-8 alleges: "TSI does not do business in New York. ... TSI has no offices, no employees, no property, no agents, no telephone numbers, no addresses, no post office boxes, no any bank accounts in New York."

In so arguing, defendant ignores the jurisprudence which has developed in the New York Court of Appeals, particularly in the past year, which confirms that – even if defendant did not set one foot in New York – the types of contacts which plaintiff has established exists here are sufficient grounds upon which to allow the assertion of long-arm jurisdiction. Indeed, it is respectfully submitted that the cases cited in Defendant's Memo are not binding in view of the undisputable contacts with New York – both during the period of the 2007 representation

agreement which defendant breached and in the eleven years which preceded – which, the Court of Appeals held, are a sufficient grounds upon which to assert long-arm jurisdiction.

In this regard, CPLR §302(a)(1), upon which the Amended Complaint relies in alleging the jurisdiction of this Court (Thakker Aff., Exhibit B, ¶11), states:

> S 302. Personal jurisdiction by acts of non-domiciliaries.   (a) Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:  1. transacts any business within the state or contracts anywhere to supply goods or services in the state; ...

Defendant was present in New York both as a matter fact, as shown by the Thakker Aff., and the exhibits annexed thereto, and as a matter of law, as its contacts with New York, including particularly those contacts had in connection with the 2007 representation agreement. Accordingly, the defendant is subject to long-arm jurisdiction, even if it was not physically present in New York during the time that the 2007 representation agreement was in effect.

## Defendant Was Physically Present In New York

Defendant repeatedly entered the State of New York during the twelve consecutive years that the plaintiff was its exclusive representative for purposes including equipment start-ups, maintenance issues and social occasions,  as documented in the Thakker Aff., at ¶ 28(a) through (e) and ¶30 Exhibits K, L, M, N and O.   Thus, long-arm jurisdiction would be proper even under the so-called single contact rule (*cf. Ferrante Equipment Co.* v. *Lasker-Goldman Corp*., 26 N.Y.2d 280, 284, 309 N.Y.S.2d 913(1970), which states: "[T]he record before us does not spell out a proper case for 302 (subd. [a], par. 1) jurisdiction, because appellant has been unable to point to a single transaction of business by respondent in New York.")

-7-

## Defendant Invoked - And Continues to Invoke - The Benefits and Protections of New York

Defendant applied to the City of New York and obtained MEA (material and equipment acceptance) numbers which defendant used, and continues to use today, to sell its HVACR machinery, products and equipment in New York. Furthermore, as alleged in the Amended Complaint, at ¶ 2, defendant's " products [were] specifically designed for use in New York area buildings and which, particularly, complied with the very specific requirements of the Building Code of the City of New York" such as the "Sound Code" and the "Refrigeration Code" of the Administrative Code of the City of New York (Thakker Aff., ¶¶ 32-35, Exhibits P and Q). It is these "act[s] by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws' [Hanson v. Denckla] (357 U.S. 253)". *McKee Elec. Co.* v. *Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34 (1967).

The allegations set forth in the Amended Complaint, especially those regarding defendant's contacts with New York, are to be given the benefit of any doubt. As set forth in *Feigenbaum* v. *Marble of America, Inc.*, 735 F.Supp. 79, 80 (S.D.N.Y. 1990):

> "The well-known standard in applying Rule 12(b) dictates that a district court should deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957) (footnote and citations omitted). "The allegations in the complaint, moreover, must be liberally construed." Rauch v. R.C.A. Corporation, 861 F.2d 29, 30 (2d Cir.1988) ( citing Dahlberg v. Becker, 748 F.2d 85, 88 (2d Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985)). The purpose of a motion to dismiss under Rule 12(b) is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer. Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984). The district court should not grant the motion

-8-

simply because the possibility of ultimate recovery is remote. Id. at
779 ( citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683,
1686, 40 L.Ed.2d 90 (1974))."

However, even if the pre-2007 contacts with New York could somehow be separated

from the 2007 representation agreement which defendant clearly breached  – an argument which

plaintiff does not concede – it is indisputable that, during 2007 defendant repeatedly and continually

transacted business in New York by means of the hundreds of e-mails in 2007 (not to mention the

"hundreds, if not thousands of e-mails" since 1996), fifty (50) exemplars of which are annexed as

Exhibit R to the Thakker Aff., and which form a further basis for the assertion of personal

jurisdiction pursuant to CPLR §302(a)(1).

## Recent Court of Appeals Decisions
## Support the Imposition of Long Arm Jurisdiction
## Under the Facts of this Case

In *Parke-Bernet Galleries* v. *Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337 (1970),

where the Court of Appeals conferred jurisdiction against an out-of-state bidder who participated in

an auction in New York by telephone. Now, long-arm jurisdiction can be invoked solely on the basis

of e-mail contacts by out of state defendants, as held in three recent cases by the Court of Appeals:

In *Deutsche Bank* v. *Montana Board of Investors*, 7 NY3d 65, 71, 818 N.Y.S.2d 164

(2006), an agency of the State of Montana was found by the Court of Appeals to have been

"transacting business" and subject to long-arm jurisdiction in New York pursuant to CPLR §

302(a)(1) when, via Bloomberg Messaging Service, it negotiated a sale of bonds with the plaintiff:

MBOI should reasonably have expected to defend its actions
in New York. As distinct from an out-of-state individual investor
making a telephone call to a stockbroker in New York (see
Rothschild, Unterberg, Towbin v McTamney, 59 NY2d 651 [1983]),
MBOI is a sophisticated institutional trader that entered New York to

-9-

transact business here by knowingly initiating and pursuing a negotiation with a DBSI employee in New York that culminated in the sale of $15 million in bonds. Negotiating substantial transactions such as this one was a major aspect of MBOI's mission–"part of its principal reason for being" (21 AD3d 90, 95 [2005]). Further, over the preceding 13 months, MBOI had engaged in approximately eight other bond transactions with DBSI's employee in New York, availing itself of the benefits of conducting business here, and thus had sufficient contacts with New York to authorize our courts to exercise jurisdiction over its person. As Professor Siegel has observed, where a defendant "deals directly with the broker's New York office by phone or mail [or e-mail] in a number of transactions instead of dealing with the broker at the broker's local office outside New York, long-arm jurisdiction may be upheld" (Siegel, NY Prac § 86, at 152 [4th ed]).

       In short, when the requirements of due process are met, as they are here, a sophisticated institutional trader knowingly entering our state--whether electronically or otherwise--to negotiate and conclude a substantial transaction is within the embrace of the New York long-arm statute.

In this case, the "principal reason for being" of defendant is the sale and installation of HVACR machinery, products and equipment.  As described in the Thakker Aff., at ¶7: "The construction of a typical New York building is a complex process and the selection, design and engineering of HVACR equipment is a lengthy, time-consuming exercise, which often stretches over several years."   This process necessarily requires that, in order to make sales and complete installations, defendant must communicate, by e-mail or other electronic means, with plaintiff. Accordingly, consistent with the rule in *Deutsche Bank* v. *Montana Board of Investors*, the defendant is subject to long-arm jurisdiction.

To similar effect is the decision in *Fischbarg* v. *Doucet*, 9 NY3d 375, 380-385, 849 N.Y.S.2d 501(2007), where a California record company and its principal, also a California resident, were subject to long-arm jurisdiction in an action for legal fees brought by a New York attorney

-10-

retained by the California defendants in an Oregon action.   The Court of Appeals affirmed long-arm jurisdiction even though the Californian defendants' sole contacts with New York attorney were made by telephone, mail and e-mail; they never came to New York for any purpose and the New York attorney performed all of his legal services in the Oregon action by telephone, holding:

> "... [T]he case before us concerns defendants' purposeful attempt to establish an attorney-client relationship here and their direct participation in that relationship via calls, faxes and e-mails that they projected into this state over many months.  Although it is impossible to precisely fix those acts that constitute a transaction of business, our precedents establish that it is the quality of the defendants' New York contacts that is the primary consideration (see Siegel, New York Practice § 86 [citing Longines-Wittnauer Watch Co. v Barnes & Reinecke, Inc., 15 NY2d 443 [1965]).  ...

> "The quality of defendants' contacts here establish a transaction of business in New York.  Defendants sought out plaintiff in New York and established an ongoing attorney-client relationship with him.  Plaintiff's time records and affidavit demonstrate that during the course of the representation, defendants communicated regularly with him in this state. [Footnote omitted]. These facts are similar to those in Reiner & Co. v Schwartz (41 NY2d 648 [1977]). There, the defendant, a resident of Massachusetts, traveled to New York in response to an advertisement, published in the Boston Globe, seeking salesmen (see id. at 649).  While here, he entered into an agreement to work on defendant's behalf in "the New England area," which was defined to exclude New York (see id.).  In concluding that CPLR 302 (a) (1) jurisdiction over the defendant was proper in a breach of contract suit brought in this state, we emphasized that the defendant's New York contacts comprised "the purposeful creation of a continuing relationship with a New York corporation" (id. at 653; see also id. [distinguishing McKee because of the "nature and quality" of the New York contact]).  A continuing relationship was also contemplated and created here, as evidenced by defendants' retention letter and the many communications cited in plaintiff's affidavit and time records, even though defendants never entered New York. ...

> "Furthermore, our decision accords with due process.  As we have explained, the United States Supreme Court's due process precedents provide that: "So long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and

-11-

should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that State" (Kreutter [v McFadden Oil Corp., 71 NY2d 460 (1988)] 71 NY2d at 466)."

In this case, defendant had a continuing relationship with plaintiff and should have expected that, to the extent a dispute arose with respect to that relationship, it would be subject to the jurisdiction of the New York Court. Indeed, defendant, wrote the representation agreement which, although invoking Oklahoma law with respect to its interpretation, did not include a "venue" provision into the agreement, thus contemplating the possibility of litigation but leaving the place of that litigation open. Here, as in *Fischbarg* v. *Doucet, id.*, a continuing relationship was contemplated and defendant should reasonably have expected to defend its actions in New York.

Finally, in *Ehrenfeld* v. *Mahfouz*, 9 N.Y.2d 501, 508, 851 N.Y.S.2d 381 (2007), the United States Court of Appeals for the Second Circuit certified to the Court of Appeals the question of whether CPLR § 302(a)(1) confers personal jurisdiction over a person "(1)who sued a New York resident in a non U.S. jurisdiction; and (2) whose contacts with New York stemmed from the foreign lawsuit and whose success in the foreign suit resulted in acts that must be performed by the subject of the suite in New York (489 F.3d 542, 545 [2007])". The Court of Appeals found no long-arm jurisdiction arose in *Ehrenfeld* v. *Mahfouz*, holding:

"Under CPLR 302 (a) (1) 'a court may exercise personal jurisdiction over any non-domiciliary,' such as defendant, "who in person or through an agent . . . transacts any business within the state" if the cause of action asserted arises out of that transaction. To determine what constitutes a transaction of business we have been guided -- as was the Legislature in enacting CPLR 302 (a) (1) -- by U.S. Supreme Court opinions delineating proper bases for personal jurisdiction under the Federal Due Process Clause (see e.g. Longines-Wittnauer v Barnes & Reineke, Inc., 15 NY2d 443, 452, 458 [1965] [quoting, among other precedents, Int'l Shoe Co. v Washington, 326 US 310,

-12-

316 [1945]).  Thus, we have held that "the overriding criterion" necessary to establish a transaction of business is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York]" (McKee Elec. Co. v Rauland-Borg, Corp., 20 NY2d 377, 382 [1967] [quoting Hanson v Denckla, 357 US 235, 253 [1958]; accord Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71 [2006]).  When a defendant engages in purposeful activity here, personal jurisdiction is proper because it has "invoked the benefits and protections of our laws" (Reiner & Co., Inc. v Schwartz, 41 NY2d 648, 652 [1977] [citations omitted]; accord Matter of Sayeh R., 91 NY2d 306, 319 [1997] ["[R]espondent deliberately and affirmatively sought the protection of this State's laws, and thereby [was] rendered amenable to our general long-arm jurisdiction"]) and thus "should reasonably expect to defend its actions [] here" (Deutsche Bank, 7 NY3d at 71 [quoting Kreutter v McFadden Oil Corp., 71 NY2d 460, 466 [1988]).

Based on the criteria recited in *Ehrenfeld* v. *Mahfouz ,id.*, defendant herein is subject to long-arm jurisdiction.  Defendant's success was contingent upon its compliance with New York laws (*i.e.,* the Refrigeration Code and the Sound Code, among other provisions of the Administrative Code and of the requirement to that defendant obtain MEA numbers), and upon its receipt of advice from plaintiff regarding compliance with those laws.  Defendant now finds itself subject to suit from plaintiff with respect to the relationship within which that advice was given; thus, defendant's susceptibility to suit in New York does not offend traditional notions of due process.

### Goods Were Supplied in New York

CPLR § 302(a)(1) furthermore provides that long-arm jurisdiction applies where one "contracts anywhere to supply goods or services in the state."  As described in the Thakker Aff., in the great majority of cases (Thakker Aff., Exhibit C), the HVACR machinery, products and equipment were purchased by plaintiff and thereafter resold to plaintiff's customers (Thakker Aff., Exhibit S).  Indeed, as shown by these invoices, title to the HVACR machinery, property and

-13-

equipment passed to plaintiff and, if plaintiff find itself unable to sell the equipment to its customer, it is plaintiff's burden to bear.

Yet, defendant argues that, because the shipping terms are "FOB Oklahoma", long-arm jurisdiction is precluded.  Defendant is in error.  The fact that the goods are to be shipped "F.O.B. (*i.e.,* Free On Board)" from a Foreign State carries no weight in the analysis to be undertaken by the Court in determining the existence of personal jurisdiction. *See, e.g., Finest Fruits, Inc*. v. *Bertuca*, 714 F.Supp. 94, 97 (S.D.N.Y.1989), which states:

> "Even if the cause of action arose out of the original f.o.b. sales agreements, this Court would have jurisdiction. The New York legislature amended the CPLR expressly to prevent defendants from making just the kind of arguments that defendants advance here. Prior to the 1979 amendment to the CPLR, the prevailing law was that 'mere shipment' of goods into New York did not suffice to establish jurisdiction under the CPLR. Mail order houses and other out-of-state shippers, then, were able to escape jurisdiction even when they shipped substantial quantities of goods into New York. The 1979 amendment was intended to "'extend[ ] New York long arm jurisdiction to [constitutionally] permissible limits so as to give plaintiffs injured in New York a convenient forum.'" ... [Footnote omitted] The amendment abrogated the 'mere shipment' rule, and provided for jurisdiction where a non-domiciliary enters into a contract to do work in or to send goods into New York, so long as the cause of action arises out of the contract.

See, *also, Cavalier Label Co., Inc*. v. *Polytam, Ltd.*, 687 F.Supp. 872, 877 (S.D.N.Y.1988), where the plaintiff was  a clothing wholesaler based in New York, engaged generally in the business of importing outerwear for resale to retail outlets in the United States, and the defendant was an Israeli manufacturer of women's sportswear which never maintained an office, employee, sales agent, or any other continuous contact with New York State, nor did it solicit business in the United States, either by means of advertising, mailings into the United States, or

-14-

telephone solicitations.    In holding long arm-jurisdiction to be present under the second prong of

CPLR §302(a)(1), the Court held:

> "It is uncontroverted that Polytam contracted to supply women's coats
> to plaintiff in New York. Polytam was well aware that the coats it
> produced were destined for New York. The fact that the coats were
> sent F.O.B. Israel does not alter the result. The court does not believe
> that the New York State legislature intended to allow potential
> defendants to escape the reach of the long-arm statute by inserting
> such terms into their contracts. Although risk of loss may have passed
> in Israel, it does not alter the practical reality that Polytam contracted
> to supply, and did in fact ship, goods into New York. This activity
> places this case squarely within section 302(a)(1)."

The same result should apply here.    Defendant sold its HVACR machinery, products

and equipment into New York.    The risk of loss in shipment is not only irrelevant, but the New York

Legislature  specifically amended the long-arm Statute, in 1979, to encompass situations, such as

those presented here, where an out-of-state manufacturer, regardless of any other consideration,

contracts to supply goods in New York.    Defendant's arguments are unavailing, in all respects.

Accordingly, it is respectfully submitted that defendant's motion should be denied under both the

first prong and the second prong of CPLR § 302(a)(1).

## POINT TWO:

## THE DEFENDANT'S MOTION FAILS
## TO SUPPORT THE PRAYER FOR ALTERNATIVE RELIEF

_____In discussing the factors to be weighed in assessing whether transfer of an action is

warranted pursuant to 28 U.S.C. § 1404(a), Defendant cites a quotation from *Ayala Branch* v. *Tad*

*Telecom, Inc.*, 197 F. Supp.2d 13 (S.D.N.Y. 2002), which identifies "the convenience of witnesses"

as the first factor to be considered, followed by the convenience of parties and the remaining factors.

However, Defendant's Memo omits the sentence which follows the well known listing of factors to

-15-

be considered, which states: "Ordinarily, plaintiff's choice of forum is accorded relatively greater importance than the other factors."

It is respectfully submitted that neither Defendant's Memo nor the Swank Aff. rises to the level persuasion required to disturb plaintiff's choice of venue.  Indeed, other than a former employee of defendant, none of the persons identified in the Swank Aff. are non-parties.  At the end of the day, the most important factor which the Court ought to consider is the convenience of the non-party witnesses.  As shown in the Thakker Aff., at ¶43, plaintiff has clearly identified the non-party witnesses and, more importantly, the testimony anticipated to be elicited from those witnesses.

" When a party seeks to transfer venue on the grounds of convenience of witnesses, it must "clearly specify the key witnesses to be called and must make a general statements of what their testimony would cover." Coker, 984 F.Supp. at 765 (( quoting Howard, 1997 WL 107633, at *3) (quoting Factors, 579 F.2d at 218) (internal quotation marks omitted)); see also Editorial Musical Latino Americana, S.A. v. Mar Int'l. Records, Inc., 829 F.Supp. 62, 66-67 (S.D.N.Y.1993). While Kmart submitted a list of witnesses, it failed to state what their testimony will convey in more than a cursory manner. See Coker, 984 F.Supp. at 765 (indicating that a "perfunctory" showing would, in the absence of other factors, generally be insufficient)." *Frene N.V.* v. *Kmart Corp.*, Not Reported in F.Supp.2d, 1998 WL 427688 * 3 (S.D.N.Y.1998).

It is respectfully submitted that defendant failed to meet its burden in support of its application for alternative relief, whereas plaintiff has made the showing required in *Frene N.V.* v. *Kmart Corp.* and the cases cited therein.  Indeed, Defendant's Memo appears to do little more than re-list the factors identified in *Ayala Branch* v. *Tad Telecom, Inc., id*.  Accordingly, the alternative relief sought in Defendant's Motion should be denied.

-16-

## <u>CONCLUSION:</u>

Defendant's Motion should be denied in its entirety  and plaintiff should be granted such other relief as is consistent with the denial of Defendant's Motion, including the imposition of costs and legal fees, to the extent permitted by law, upon defendant.

Dated: New York, New York
        April 1, 2008

SAMUEL E. KRAMER, ESQ.
*Attorney for Plaintiff*
*DNT Enterprises, Inc.*

By:    S/ Samuel E. Kramer
       _____
       Samuel E. Kramer (SK 6948)
       225 Broadway - Suite 3300
       New York, New York 10007
       (212) 285-2290
       samkatty@bway.net

-17-