# Exhibit A

Samuel E. Kramer, Esq.
225 Broadway - Suite 3300
New York, New York 10007
(212) 285-2290
*Attorney for Plaintiff, DNT Enterprises, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DNT ENTERPRISES, INC.,

                          Plaintiff,

      -against-

TECHNICAL SYSTEMS,
A DIVISION OF RAE CORPORATION,

                          Defendant.
-------------------------------------------------------X

Case No.:07 Civ. 8661 (LLS)
ECF CASE

## AMENDED COMPLAINT IN A CIVIL ACTION

        Plaintiff, DNT Enterprises Inc., by its attorney, Samuel E. Kramer, Esq., as and for

its Amended Complaint herein, sets forth and alleges as follows:

## PRELIMINARY STATEMENT:

1.        This action, sounding in breach of contract, is brought by plaintiff, DNT Enterprises,

Inc., which is, and for over ten (10) uninterrupted years has been, the exclusive  the New

York metropolitan area representative of defendant, Technical Systems a Division of RAE

Corporation, an Oklahoma manufacturer of heating, ventilation, air conditioning and

refrigeration ("HVACR") products, machinery and equipment.

2.        Plaintiff singlehandedly developed the highly competitive New York market for

defendant's HVACR products, machinery and equipment by locating and servicing

customers and providing essential assistance to defendant, including countless hours of

expert advice to help defendant create or develop products specifically designed for use in New York area buildings and which, particularly, complied with the very specific requirements of the Building Code of the City of New York.

3.        On September 21, 2007, defendant unlawfully, in apparent bad faith and without justification purported to unilaterally cancel the parties' representation agreement pursuant to which plaintiff had an absolute right to continue to be defendant's exclusive New York representative through March, 2008; on or about October 4, 2007, by letter received October 9, 2007, defendant purported to rescind the cancellation, but, by then, the cancellation of the exclusive representation agreement had become known within the community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products, machinery and equipment in the New York metropolitan area.

4.        As a result, plaintiff sustained actual money damages due to the loss of as many as thirty (30) bids, with an aggregate value of nearly $4,000,000.00, which were outstanding at the time of the alleged cancellation. As a further result of defendant's breach of contract, plaintiff sustained irreparable damage to its reputation within the business community in the New York metropolitan area within which plaintiff operates, to the specific benefit of one of plaintiff's largest competitors. Moreover, during the period since the alleged rescission of the cancellation, defendant has breached its obligations under the existing agreement. In this regard, defendant has failed to provide timely pricing and information regarding delivery, lead-times and closing dates, thereby rendering it impossible for plaintiff to service those customers of plaintiff to whom plaintiff would ordinarily recommend defendant's HVACR products, machinery and equipment.

## PARTIES:

5.       Plaintiff is a Delaware corporation with its principal place of business in the County,

City and State of New York

6.       Upon information and belief, as set forth in the written agreement between the

parties, dated March 2, 2007 (the "Current Representation Agreement"), defendant is "an

Oklahoma corporation having its principal place of business in the Mid-America Industrial

Park, approximately four miles south of Pryor, Oklahoma".

7.       The Current Representation Agreement states: "No Agency Relationship.

Representative [*i.e.,* plaintiff] is an independent contractor, and is expressly prohibited from

making any representation on behalf of Technical Systems [*i.e.*, defendant] not expressly

approved in writing by Technical Systems. ..."

8.       The Current Representation Agreement, which is the eleventh consecutive agreement

between the parties, has a term of one year, and will expire on or about March 2, 2008.

## JURISDICTION AND VENUE:

9.       This Court has jurisdiction over this case pursuant to 28 U.S.C.§1332(a)1 in that the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

and is between citizens of different States.

10.       Venue in this case is proper in this District pursuant to 28 U.S.C.§1391(a)2.

11.       Pursuant to New York Civil Practice Law and Rules §302(a)(1) this Court has

jurisdiction because, *inter alia:* defendant developed products specifically intended for use

in the State of New York and intended to comply with the requirements of the Building Code

of the City of New York with respect to, *inter alia,* sound and the necessity of a licensed

operating engineer; defendant's employees traveled to New York to meet with plaintiff in connection with the contract generally, the installation of defendant's HVACR products, machinery and equipment in New York, including the emanation of sound from the equipment particularly; defendant entered into contracts to deliver HVACR products, machinery and equipment in New York; defendant traveled to New York to attend social and other functions intended hosted by plaintiff and intended to foster and increase the sale of defendant's products, including but not limited to chillers, dry coolers and other HVAC&R products, machinery and equipment.

12.       The Current Representation Agreement states: "<u>Governing Law.</u> This agreement is entered into in the State of Oklahoma and shall be construed for all purposes in accordance with the laws of that State", but makes no mention of the venue of a case arising therefrom.

**BACKGROUND:**

**Plaintiff's Involvement in the HVACR Business:**

13.       HVACR products, machinery and equipment is one of the crucial elements in the construction of all office and apartment buildings, whether large skyscrapers, smaller "taxpayers" or other structures.

14.       HVACR products, machinery and equipment includes, but is not limited to condensers, condensing units, chillers, air handlers, roof-top units and fluid coolers.

15.       Throughout the United States, there are a number of manufacturers of HVACR products, machinery and equipment, including defendant.

16.       Plaintiff serves as manufacturers' representative in the New York metropolitan area for a number of different manufacturers of HVACR products, machinery and  equipment.

17.     Plaintiff has been in the business of representing manufacturers of HVACR products, machinery and equipment for over fourteen years.

18.     Plaintiff has specialized knowledge of HVACR products, machinery and equipment, which it has developed during the fourteen years that it has been in business.

19.     Plaintiff's specialized knowledge of the HVACR business includes, but is not limited to knowledge of:

a.     The particulars and qualities of HVACR products, machinery and equipment produced and/or manufactured in the United States;

b.     The needs and requirements of the various office buildings, apartment buildings or other structures in the New York metropolitan area;

c.     The engineers, builders, contractors and other construction specialists responsible for the selection and installation of HVACR products, machinery and equipment in construction in the New York metropolitan area;

d.     The latest developments and improvements in HVACR technology; and

e.     The means and manners by which HVACR products, machinery and equipment may be fitted to new construction and renovation of the sorts of buildings constructed or renovated in the New York metropolitan area.

f.     The requirements of the Building Code of the City of New York, and other requirements of law, with respect to the installation, maintenance and operation of HVACR products, machinery and equipment.

20.     Plaintiff's specialized knowledge also includes an understanding and comprehension or the physical, financial and myriad other considerations required to be taken into account

in determining the particular HVACR product, machinery and/or equipment necessary to properly function in the particular construction jobs to be performed in the New York metropolitan area.

**Plaintiff's Performance of Its Duties**
**Pursuant to the Parties' Agreements:**

21.      In or about 1996, plaintiff entered into the first of eleven written agreements with defendant, each with a duration of one year and expiring in March of each year, pursuant to which plaintiff became and remained defendant's exclusive representative in the New York metropolitan area (the "Prior Representation Agreement(s)").

22.      The Prior and Current Representation Agreements were written solely by defendant.

23.      The Prior Representation Agreements  and the Current Representation Agreement define the geographic area within which plaintiff serves as the exclusive representative of defendant as: "The Following Counties [*sic.*] in the State of New York: Brooklyn, Queens, Manhattan, Bronx, Staten Island, Long Island, Westchester, Putnam, Orange, Rockland." (the "New York Metropolitan Area").

24.      Plaintiff, as the exclusive New York Metropolitan Area representative of defendant pursuant to its obligations under the Prior Representation Agreements and Current Representation Agreement, undertook to and did:

a.          Develop a fair share of the market reasonably available for defendant's products in the New York Metropolitan Area;

b.          Provide adequate customer service of defendant's HVACR products, machinery and equipment in the New York Metropolitan Area;

-6-

c.    Maintain sufficient working capital to represent defendant in the New York Metropolitan Area; and

d.    Use resources necessary to effectively represent defendant in the New York Metropolitan Area.

25.    Throughout the past eleven years, plaintiff, in furtherance of its obligations under the Prior Representation Agreements and Current Representation Agreement, has worked closely with defendant in the development and marketing of HVACR products, machinery and equipment to be sold and used in the New York Metropolitan Area and promoted goodwill for defendant and maintained a sufficient organization to accomplish the effective coverage and development of the New York Metropolitan Area by, *inter alia*:

a.    Maintaining contacts with builders, architects, engineers and others involved in the construction business in the New York Metropolitan Area;

b.    Preparing catalogs and other presentations to purchasers and potential purchasers of defendant's products and equipment in the New York Metropolitan Area ; and

c.    Advising builders and engineers with respect to the most appropriate HVACR products, machinery and equipment in the various construction jobs performed or undertaken in the New York Metropolitan Area.

26.    According to plaintiff's books and records, during the past eleven years, pursuant to its obligations under the Prior Representation Agreements and Current Representation Agreement, sales of defendant's HVACR products, machinery and equipment in the New York Metropolitan Area have been as follows:

-7-

|  | Year: | Sales by Defendant: |
|---|---|---|
| a. | 1996 | $      5,472.33 |
| b. | 1997 | $    640,738.95 |
| c. | 1998 | $ 1,708,468.44 |
| d. | 1999 | $ 1,106,439.77 |
| e. | 2000 | $ 3,610,334.39 |
| f. | 2001 | $ 1,201,028.05 |
| g. | 2002 | $ 2,032,032.53 |
| h. | 2003 | $ 1,298,431.31 |
| i. | 2004 | $ 1,586,858.52 |
| j. | 2005 | $ 1,317,800.86 |
| k. | 2006 | $ 1,618,175.94 |
| l. | 2007 (placed through 9/28/07) | $    904,946.76 |

27.     In an e-mail circulated on January 8, 2007, defendant identified plaintiff as having been Number "1" on its list of "2006 Top Performers" in equipment sales and stated to plaintiff: "Thanks as always to the Top Dogs of TSI".

28.     In March, 2007, defendant advised plaintiff that the Professional Golf Association championship tournament was to be played at Southern Hills Golf Course, near defendant's place of business in Tulsa, Oklahoma, in August, 2007,  that defendant had tickets and advised: "If you have a customer you want to bring to this, I am giving you first shot at getting on the list"; throughout July and August, 2007, the parties made arrangements  – including arranging flights, travel itineraries, tours of defendant's plant and purchase of PGA

-8-

Tournament shirts – in conjunction with plaintiff's marketing efforts.

**Defendant Hires Kevin Trowhill:**

29.        Prior to August, 2007, Sam Jones, defendant's Executive Vice President responsible for Sales and Marketing, was plaintiff's primary contact with defendant.

30.        On August 20, 2007, defendant issued a public announcement that Sam Jones was "to be replaced by Kevin Trowhill, of "Webco, Inc. (CES Company) ["Webco"] in Springfield, Missouri. While at Webco, Kevin, was National Sales Manager."

31.        Upon information and belief, on or about September 5, 2007, Mr. Trowhill commenced his duties on behalf of defendant.

32.        Upon information and belief, Webco is a division of Commercial Environmental Systems Group, Inc. ("CES"), and is a manufacturer of HVACR products, machinery and equipment; other divisions of CES (Governair, Temtrol) are also located in Oklahoma.

33.        Upon information and belief, CES is headquartered in Chaska, Minnesota, and operates as a subsidiary of Nordyne, Inc., of O'Fallon, Missouri, which is, as well, a manufacturer of, *inter alia*, HVACR products, machinery and equipment.

**Gil-Bar Industries Inc.'s Connections to Defendant:**

34.        Upon information and belief, Gil Bar Industries, Inc. ("Gil-Bar") is a domestic corporation with its primary place of business located at 5 West 19th Street in the City, County and State of New York.

35.        Upon information and belief, Gil-Bar is, and for many years has been, the manufacturer's representative for Webco, as well as other manufacturers of HVACR products, machinery and equipment in the New York Metropolitan Area.

36.        Gil-Bar is plaintiff's largest direct competitor in the New York metropolitan area.

37.        Upon information and belief, on or about and prior to September 21, 2007, Joe Sbarra and/or Jon Gill, officers of Gil-Bar, traveled to plaintiff's place of business in Oklahoma and there and then met with officers and employees of plaintiff, including Mr. Trowhill.

38.        Upon information and belief, on or about or prior to or after September 21, 2007, defendant advised Gil-Bar that the Current Representation Agreement between plaintiff and defendant would be, or had been, cancelled and that Gil-Bar would thereupon replace plaintiff as defendant's exclusive representative in the New York metropolitan area; as a direct consequence, defendant thereby enabled Gil-Bar, if Gil-Bar so chose, to make contact within the community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products, machinery and equipment in the New York Metropolitan Area and assert to said builders, architects and engineers that, *inter alia*:

a.        plaintiff was unable maintain its contractual relationship with defendant;

b.        plaintiff could not fulfill orders placed with defendant;

c.        builders, architects and engineers involved in the selection, purchase and installation of HVACR products, machinery and equipment in the New York Metropolitan Area should not purchase from plaintiff HVACR products, machinery and equipment manufactured by defendant;

d.        to the extent that builders, architects and engineers wished to purchase HVACR products, machinery and equipment manufactured by defendant, to do business with Gil-Bar, rather than plaintiff, which, regardless of any subsequent rescission of the termination, would no longer represent defendant subsequent to March, 2008.

**<u>Defendant Breaches The Current Representation Agreement</u>**:

39.        Throughout the month of September, 2007 plaintiff continued to present bids to

defendant for HVACR products, machinery and equipment in the New York Metropolitan

Area, including the following bids and orders for equipment manufactured by defendant:

     a.        On September 19, 2007, a bid with a value of $1,615,000.00 (the "200 Fifth

     Avenue project");

     b.        On September 20, 2007 Order T-7924 with a value of $25,116.00;

     c.        On September 20, 2007, Order T-7924 with a value of $24,726.00;

     d.        On September 21, 2007, Order T-7505 with a value of $1,745.00;

     e.        On September 21, 2007, a bid with a value of $1,110,822.00 (the "Flushing

     Meadow project").

40.        The Current Representation Agreements set forth the following with respect to the

termination of same:

> This agreement may be terminated prior to the
> expiration of the Term set forth above only as follows:
> ... ii. Technical Systems may terminate this
> Agreement at any time if Technical Systems
> determines, in its sole discretion, that Representative
> has failed to develop a fair share of the market
> reasonably available for the Products in light of the of
> prevailing adequate customer service for the products,
> lacks sufficient working capital to provide the
> representation required by the trade in territory or
> otherwise fails to use the resources necessary to
> effectively represent Technical Systems. Technical
> Systems will provide 30-day protection on
> outstanding quotes the representative may have at the
> time of termination.

41.        On September 21, 2007, defendant, by e-mail letter attachment to plaintiff, signed by

Mr. Trowhill, bearing the reference "Cancellation of Representative Agreement" (the "Cancellation Letter") which, in its entirety, stated:

> Per the terms of our contract agreement, effective today, I am canceling DNT Enterprises, Inc. representation contract for Technical Systems' products.
>
> Technical Systems will protect your outstanding quotations for a period of 30 days from 9/21/07. If there are projects that you would like protection beyond 30 days please identify those projects on your list and we will determine on a project by project basis the extent, if any, of extended protection. This list must be submitted no later than 9/27/07. After than time Technical Systems will have no obligation to protect your outstanding quotations. If you have a project that is closing within those 30 days that is not on the protected list, we will deal with it on a job by job basis.
>
> I appreciate all of your efforts in representing Technical Systems equipment, but I feel it is in our best interest to pursue a different direction for representation. I wish you the best of luck. If we can be of any service on an individual basis, don't hesitate to call.

42.     The Cancellation Letter, and the purported cancellation of the Current Representation Agreement alleged to have been effectuated thereby was in breach of contract.

43.     The Cancellation Letter, and the purported cancellation of the Current Representation Agreement alleged to have been effectuated thereby, was undertaken in bad faith.

44.     In the absence of the Cancellation Letter, the Current Representation Agreement would have remained in full force, unabated and effective through March, 2008.

45.     The Cancellation Letter was in derogation of and without regard to the requirements

of the Termination Clause of the Current Representation Agreement as to the substantive

basis pursuant to which the Current Representation Agreement may be terminated.

46.        The Cancellation Letter was issued and sent to plaintiff despite the fact that plaintiff,

in fact:

       i.        Developed a fair share of the market reasonably available for

             defendant's products  in the New York Metropolitan Area;

       ii.       Provided adequate customer service of defendant's HVACR products,

             machinery and equipment;

       iii.      Maintained sufficient working capital to represent defendant in the

             New York Metropolitan Area; and

       iv.      Used resources necessary to effectively represent defendant pursuant

             to the Agreements in the New York Metropolitan Area.

47.        The Cancellation Letter was  in derogation of and without regard to the requirements

of the Termination Clause of the Current Representation Agreement as to the procedure by

which the Current Representation Agreement may be terminated, in that, *inter alia*:

       i.        The Cancellation Letter neglected, failed and refused  to undertake to

             "provide 30 day protection on outstanding quotes the representative may have

             at the time of termination."

       ii.       The Cancellation Letter purported to require that: "This list must be

             submitted no later than 9/27/07";  and

       iii.      The Cancellation Letter was not sent to plaintiff by Registered mail,

             postage prepaid, as required pursuant to the Notice requirement of the

Representation Agreement.

48.     Defendant issued the Cancellation Letter notwithstanding the fact that, at the very moment that the Cancellation Letter was issued, defendant had just accepted orders from plaintiff totaling in excess of $50,000.00 (*cf.,* ¶ 39 (b), ( c ) and (d), *supra.*) and, furthermore, defendants were in the midst of preparing prices for two other bids from plaintiff with an aggregate value of over  $2,735.000.00  (*cf.,* ¶ 39 (a) and (e), *supra.*).

49.     On September 24, 2007, Neil Thakker, plaintiff's President, placed a telephone call to and spoke with Eric Swank, President and Chief Executive Officer of defendant, with respect to the Cancellation Letter.

50.     On September 24, 2007, defendant, by e-mail to plaintiff, issued by Mr. Trowhill (the "September 24, 2007 e-mail"), stated, in its entirety, as follows:

> Neil, I understand that you have spoke with Eric regarding protection on some of your projects. We can accommodate your (4) month protection request on a project by project basis, it would be based upon the list you submit to us.  Feel free to call me (extension 165) if you would like to discuss prior to sending in your protection list.  Thank you, Kevin.

51.     The September 24, 2007 e-mail misrepresents the conversation between Mr. Thakker and Mr. Swank in that, *inter alia*:

a.      Mr. Thakker did not request "protection on some of [plaintiff's] projects";

b.      Mr. Thakker did not request a "(4) month protection"; and

c.      Mr. Thakker did not agree to provide a list in response to the alleged termination of the Representation Agreement.

52.     On September 27, 2007, plaintiff wrote to defendant, by telecopier and Registered

-14-

Mail, the latter being in accordance with the Notice requirements of the Current

Representation Agreement and advised defendant, *inter alia*, as follows:

> [Plaintiff] expects that [Defendant] shall continue to
> perform its obligations pursuant to the Contract, and
> that [Defendant's] letter of September 21, 2007 and
> its e-mail of September 24, 2007 shall be deemed to
> be withdrawn and of no further force and effect.

### Plaintiff Commences This Action
### and Defendant Purports to Rescind the Cancellation Letter:

53.         The Cancellation Letter, and the purported cancellation of the Current Representation

Agreement alleged to have been effectuated thereby, constituted a breach of contract from

which plaintiff sustained actual and consequential damages.

54.         On October 5, 2007, plaintiff commenced this action.

55.         The Current Representation Agreement thereunder was otherwise in full force and

effect through March, 2008.

56.         The Complaint, filed on October 5, 2007, stated, *inter alia,* as follows: "immediately

after commencement of this case, plaintiff shall seek preliminary injunctive relief, pursuant

to Rule 65(a) of the Federal Rules of Civil Procedure."

57.         On October 9, 2007, as plaintiffs were preparing to proceed with the aforementioned

motion for a preliminary injunction, a letter from defendants, dated October 4, 2007, was

received at plaintiff's place of business (the "Alleged Rescission Letter").

58.         The Alleged Rescission Letter contained many false statements and fallacious

accusations but, nonetheless, appeared to indicate a willingness on the part of defendants to

rescind the purported termination of the Current Representation Agreement.

-15-

59.         The actual and consequential damages sustained by plaintiff could not be cured by any rescission thereof which may have been contained within in or implied by the contents of the Alleged Rescission Letter.

60.         Accordingly, plaintiff advised defendant, *inter alia*, as follows:

> ... Although this rescission appears to set forth conditions which are inconsistent with the Exclusive Representation Agreement, my client believes that, nonetheless, the parties can come to an agreement pursuant to which all of the issues which have arisen as a result of the 9/21/07 e-mail can be resolved, and that [the within pending action] can be settled without the need for further litigation.

61.         The parties thereafter engaged in negotiations which, ultimately, did not yield a resolution of this action.

### Plaintiff Is Not Award Contracts By Reason of the Issuance of the Cancellation Letter:

62.         Plaintiff's relationships within the relatively small community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products, machinery and equipment in the New York Metropolitan Area is an essential element of plaintiff's business.

63.         Subsequent to the issuance of the Cancellation Letter, plaintiff received inquiries from builders, architects, engineers and/or other persons in the construction industry in the New York Metropolitan Area with respect to the status of plaintiff's relationship with defendant, including, specifically, whether the Current Representation Agreement had been terminated and whether plaintiff was still the exclusive representative of defendant in the New York Metropolitan Area.

-16-

64.    Plaintiff was compelled to advise builders, architects, engineers and/or other persons in the construction industry in New York of the alleged termination of the Current Representation Agreement by defendant, or to otherwise confirm the issuance of the Cancellation Letter.

65.    At the time that the Cancellation Letter was issued, plaintiff had placed, and was awaiting a response to a sealed written bid with respect to the 200 Fifth Avenue project.

66.    The specifications of the 200 Fifth Avenue project required the use of certain, particularly identified RAE equipment, or its equivalent.

67.    At or about the time that the Cancellation Letter was issued, plaintiff reminded defendant that the 200 Fifth Avenue project was being bid by plaintiff, and that the issuance of the Cancellation Letter would jeopardize that bid.

68.    As a direct result of defendant's issuance of the Cancellation Letter and the breach of the Current Representation Agreement effectuated thereby, plaintiff was not awarded the contract with respect to 200 Fifth Avenue project.

69.    Upon information and belief, if defendant had not breached the Current Representation Agreement, as aforesaid, plaintiff would have been awarded the contract with respect to the 200 Fifth Avenue project.

70.    At the time that the Cancellation Letter was issued, plaintiff had placed, and was awaiting a response to a sealed written bid with respect to the Flushing Meadow project.

71.    The specifications of the Flushing Meadow project required the use of certain, particularly identified, *inter alia*, RAE equipment, or its equivalent.

72.    At or about the time that the Cancellation Letter was issued, plaintiff reminded

-17-

defendant that the Flushing Meadow project was being bid by plaintiff, and that the issuance of the Cancellation Letter would jeopardize that bid.

73.     As a direct result of defendant's issuance of the Cancellation Letter and the breach of the Current Representation Agreement effectuated thereby, plaintiff's bid with respect to Flushing Meadow project has been jeopardized.

74.     Had defendant not breached the Current Representation Agreement, plaintiff would have been awarded the contract with respect to the Flushing Meadow project.

75.     As a direct result of defendant's issuance of the Cancellation Letter and the breach of the Current Representation Agreement effectuated thereby, plaintiff was not awarded and will not be awarded the contract(s) with respect to certain other projects in addition to the 200 Fifth Avenue project and the Flushing Meadow project were being bid by plaintiff (the "Other Projects") upon which plaintiff had submitted bids.

76.     At or about the time that the Cancellation Letter was issued, plaintiff reminded defendant that the issuance of the Cancellation Letter would jeopardize the Other Projects.

77.     Had defendant not breached the Current Representation Agreement, plaintiff would have been awarded the contract with respect to the some or all of the Other Projects.

### Defendant's Failure to Provide Timely Bids and Bad Faith Subsequent to the Cancellation Letter:

78.     Throughout the period since the issuance of the Cancellation Letter, plaintiff continued to solicit orders for defendants' products and transmitted those bids to defendants.

79.     Pursuant to the Current Representation Agreement, defendant was and is obligated to provide timely information to plaintiff with respect to pricing, delivery terms and other

information necessary for plaintiff to sell defendants products.

80.        During the period since the issuance of the Cancellation Letter, defendant has repeatedly failed or refused to provide timely information to plaintiff with respect to pricing, delivery terms and other information necessary for plaintiff to sell defendant's products.

81.        As a result of the failure or refusal of defendant to provide timely information to plaintiff with respect to pricing, delivery terms and other information necessary for plaintiff to sell defendants products, plaintiff has been unable to sell defendant's products and earn commissions thereon.

82.        Defendant's failure or refusal to provide timely information to plaintiff with respect to pricing, delivery terms and other information necessary for plaintiff to sell defendants' products was undertaken and conducted in bad faith.

83.        Defendant's failure or refusal of defendant to provide timely information to plaintiff with respect to pricing, delivery terms and other information necessary for plaintiff to sell defendants products, individually and severally, constitute one or more breaches of contract, by reason of which plaintiff has sustained actual and consequential damages in a sum to be calculated at trial.

84.        Pursuant to the Current Representation Agreement, defendant was and is obligated to provide prices for defendant's products which were justifiable and made in good faith.

85.        During the period since the issuance of the Cancellation Letter, defendant has repeatedly and without justification and in bad faith increased its prices far above those theretofore set for the same or substantially identical products.

86.        As a result of the defendant's unjustified and bad faith increases in prices, plaintiff

has been unable to sell defendant's products and earn commissions thereon.

87.        Defendant's unjustified and bad faith increases in prices, individually and severally, constitute one or more breaches of contract, by reason of which plaintiff has sustained actual and consequential damages in a sum to be calculated at trial.

## AS AND FOR A FIRST CLAIM:
### (Breach of Contract)

88.        Plaintiff repeats and realleges each and every allegation set forth in paragraph "1" through "87" hereof, inclusive, with the same force and effect as if same had been set forth at length herein.

89.        Defendant's conduct as aforesaid, constituted one or more breaches of contract.

90.        As a result of defendant's breach or breaches of contract as aforesaid, plaintiff has sustained and continues to sustain damages including but not limited to:

a.        Actual monetary damages sustained by reason of not having been awarded the contract with respect to 200 Fifth Avenue project;

b.        Actual monetary damages sustained in the event that plaintiff is not awarded the contract with respect to Flushing Meadow project;

c.        Actual monetary damages sustained by reason of not having been awarded the contract with respect to the Other Projects;

d.        Actual monetary damages sustained by reason of defendant's failure or refusal of defendant to provide timely information to plaintiff with respect to pricing, delivery terms and other information necessary for plaintiff to sell defendant's products since the issuance of the Cancellation Letter;

e.     Actual monetary damages sustained by reason of defendant's bad faith with respect to pricing since the issuance of the Cancellation Letter;

f.     Actual monetary damages sustained by reason of the loss of business to Gil-Bar since the revelation to Gil Bar of the issuance of the Cancellation Letter;

g.     Actual and consequential damages sustained or to be sustained by reason of Gil-Bar having been advised by defendant that the Current Representation Agreement between plaintiff and defendant would be, or had been, terminated prior to the expiration of the term of the Current Representation Agreement in March, 2008.

h.     Actual monetary damages sustained by reason of plaintiff's inability to make sales of defendant's HVACR products, machinery and equipment, pursuant to the Current Representation Agreement by reason of the knowledge of builders, architects and engineers of the Cancellation Letter and/or the alleged termination of the Current Representation Agreement by defendant;

i.     Actual and consequential damages sustained or to be sustained by reason of being required to advise the community of builders, architects and engineers that plaintiff had been terminated prior to the expiration of the term of the Current Representation Agreement in March, 2008.

91.     As a result defendant's foregoing breach or breaches of contract, plaintiff has sustained and will sustain damages in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

92.     By reason of the foregoing, defendant is liable and indebted to plaintiff in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

## AS AND FOR A SECOND CLAIM:
### (Anticipatory Breach of Contract)

93.      Plaintiff repeats and realleges each and every allegation set forth in paragraph "1"

through "87" hereof, inclusive, with the same force and effect as if same had been set forth

at length herein.

94.      The Current Representation Agreement is effective through March, 2008.

95.      Defendant has announced that it will have an exhibit at the "AHR Expo" which

advertises itself as "the world's largest HVAC&R trade show event for professionals to buy,

sell, network and learn" and is scheduled to take place at the Javits Convention Center in

New York County on January 22 through January 24, 2008.

96.      Defendant is obligated to continuing perform its obligations pursuant to Current

Representation Agreement in a timely manner and in good faith.

97.      Since the time of the issuance of the Cancellation Letter, defendant has failed and

continues to fail to perform its obligations thereunder in a timely manner and in good faith.

98.      Defendant's continuing conduct in failing to perform its obligations in a timely

manner and in good faith, as aforesaid, constitutes an anticipatory breach of contract.

99.      As a result of defendant's anticipatory breach of contract, plaintiff has sustained and

continues to sustain damages, including but not limited to:

a.      Actual monetary damages which are or would otherwise be forthcoming by

reasons of all sales of defendant's HVACR products, machinery and equipment in

the New York Metropolitan Area during the period through and including March,

2008, pursuant to the Current Representation Agreement;

-22-

b.       Actual and consequential damages which are or would otherwise be forthcoming from all sales of defendant's HVACR products, machinery and equipment by reason of the attendance of builders, architects and engineers from the New York Metropolitan Area who shall attend the AHR Expo which is scheduled to take place at the Javits Convention Center in New York County on January 22 through January 24, 2008;

c.       Actual and consequential damages sustained or to be sustained by reason of plaintiff being unable to offer to its customers defendant's HVACR products, machinery and equipment through and including March, 2008;

d.       Actual and consequential damages sustained or to be sustained by reason of being require to advise the community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products, machinery and equipment in the New York Metropolitan Area that plaintiff had been terminated prior to the expiration of the term of the Current  Representation Agreement in March, 2008;

e.       Actual and consequential damages sustained or to be sustained by reason of Gil-Bar having been advised by defendant that the Current Representation Agreement between plaintiff and defendant would be, or had been, terminated prior to the expiration of the term of the Current  Representation Agreement in March, 2008.

100.     As a result defendant's anticipatory breach of contract, plaintiff will sustain damages in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

101.     By reason of the foregoing, defendant is liable and indebted to plaintiff in an amount

-23-

to be calculated at trial but, in any event no less than $5,000,000.00.

**AS AND FOR A THIRD CLAIM:**
**(Oklahoma Statute §12A-1-304. )**

102.     Plaintiff repeats and realleges each and every allegation set forth in paragraph "1" through "87" hereof, inclusive, with the same force and effect as if same had been set forth at length herein.

103.     Pursuant to the Current Representation Agreement, plaintiff purchased from defendant and defendant sold to plaintiff certain goods, *i.e.*, HVACR products, machinery and equipment.

104.     The Current Representation Agreement is subject to the Oklahoma Uniform Commercial Code, Title 12-A of the Oklahoma Statutes.

105.     Oklahoma Statute §12A-1-304 provides: "Every contract of duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement."

106.     Defendant's issuance of the Cancellation Letter, and the purported termination o the Current Representation Agreement thereby, was a violation of the obligation of good faith imposed upon defendant by reason of Oklahoma Statute §12A-1-304.

107.     As a result defendant's violation of Oklahoma Statute §12A-1-304, plaintiff has sustained  and continues to sustain damages, including but not limited to:

a.          Actual monetary damages sustained by reason of not having been awarded the contract with respect to 200 Fifth Avenue project;

b.          Actual monetary damages sustained in the event that plaintiff is not awarded the contract with respect to Flushing Meadow project;

-24-

c.        Actual monetary damages sustained by reason of not having been awarded the contract with respect to the Other Projects;

d.        Actual monetary damages sustained by reason of defendant's failure or refusal of defendant to provide timely information to plaintiff with respect to pricing, delivery terms and other information necessary for plaintiff to sell defendant's products since the issuance of the Cancellation Letter;

e.        Actual monetary damages sustained by reason of defendant's bad faith with respect to pricing since the issuance of the Cancellation Letter;

f.        Actual monetary damages sustained by reason of the loss of business to Gil-Bar since the revelation to Gil Bar of the issuance of the Cancellation Letter;

g.        Actual and consequential damages sustained or to be sustained by reason of Gil-Bar having been advised by defendant that the Current Representation Agreement between plaintiff and defendant would be, or had been, terminated prior to the expiration of the term of the Current Representation Agreement in March, 2008.

h.        Actual monetary damages sustained by reason of plaintiff's inability to make sales of defendant's HVACR products, machinery and equipment, pursuant to the Current Representation Agreement by reason of the knowledge of builders, architects and engineers of the Cancellation Letter and/or the alleged termination of the Current Representation Agreement by defendant;

i.        Actual and consequential damages sustained or to be sustained by reason of being required to advise the community of builders, architects and engineers that plaintiff had been terminated prior to the expiration of the term of the Current

Representation Agreement in March, 2008.

108.     As a result defendant's violation of Oklahoma Statute §12A-1-304, plaintiff has sustained and will sustain damages in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

109.     By reason of the foregoing, defendant is liable and indebted to plaintiff in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

### AS AND FOR A FOURTH CLAIM:
### (Specific Performance)

110.     Plaintiff repeats and realleges each and every allegation set forth in paragraph "1" through "87" hereof, inclusive, with the same force and effect as if same had been set forth at length herein.

111.     The Current Representation Agreement, by its terms, is a valid and binding agreement between plaintiff and defendant is in full force and effect through March, 2008, of which plaintiff is lawfully entitled to defendant's full and faithful performance.

112.     Since the time of the issuance of the Cancellation Letter, defendant has failed and continues to fail to perform its obligations thereunder in a timely manner and in good faith, by reason which plaintiff has sustained and continues to sustain damages, including but not limited to:

    a.     Actual monetary damages sustained by reason of not having been awarded the contract with respect to 200 Fifth Avenue project;

    b.     Actual monetary damages sustained in the event that plaintiff is not awarded the contract with respect to Flushing Meadow project;

-26-

c.       Actual monetary damages sustained by reason of not having been awarded the contract with respect to the Other Projects;

d.       Actual monetary damages sustained by reason of defendant's failure or refusal of defendant to provide timely information to plaintiff with respect to pricing, delivery terms and other information necessary for plaintiff to sell defendant's products since the issuance of the Cancellation Letter;

e.       Actual monetary damages sustained by reason of defendant's bad faith with respect to pricing since the issuance of the Cancellation Letter;

f.       Actual monetary damages sustained by reason of the loss of business to Gil-Bar since the revelation to Gil Bar of the issuance of the Cancellation Letter;

g.       Actual and consequential damages sustained or to be sustained by reason of Gil-Bar having been advised by defendant that the Current Representation Agreement between plaintiff and defendant would be, or had been, terminated prior to the expiration of the term of the Current Representation Agreement in March, 2008.

h.       Actual monetary damages sustained by reason of plaintiff's inability to make sales of defendant's HVACR products, machinery and equipment, pursuant to the Current Representation Agreement by reason of the knowledge of builders, architects and engineers of the Cancellation Letter and/or the alleged termination of the Current Representation Agreement by defendant;

i.       Actual and consequential damages sustained or to be sustained by reason of being required to advise the community of builders, architects and engineers that plaintiff had been terminated prior to the expiration of the term of the Current

Representation Agreement in March, 2008..

113.     As a result of defendant's failure to fully and faithfully perform its obligations under the Current Representation Agreement in a timely manner and in good faith through March, 2008, plaintiff has sustained and will sustain damages in an amount to be calculated at trial but, in any event no less than $5,000,000.00.

114.     By reason of the foregoing, defendant is liable to plaintiff for the specific performance of the Current Representation Agreement through March, 2008.

### AS AND FOR A FIFTH CLAIM:
### (Declaratory Judgment)

115.     Plaintiff repeats and realleges each and every allegation set forth in paragraph "1" through "87" hereof, inclusive, with the same force and effect as if same had been set forth at length herein.

116.     Defendant has announced that it will have an exhibit at the "AHR Expo" which advertises itself as "the world's largest HVAC&R trade show event for professionals to buy, sell, network and learn" and is scheduled to take place at the Javits Convention Center in New York on January 22 through January 24, 2008.

117.     In the absence of declaratory relief setting for the rights and obligations of the parties, including a declaration that plaintiff is the exclusive representative of defendant in the New York Metropolitan Area, plaintiff shall sustain damages in and among the community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products, machinery and equipment in the New York Metropolitan Area and, more particularly, at the AHR Expo in New York from January 22 through January 24, 2008.

-28-

118.        Plaintiff lacks an adequate remedy at law with respect to the foregoing damages.

119.        By reason of the foregoing, a judgment must be made and entered declaring plaintiff

to be defendant's exclusive representative in the New York Metropolitan Area until the

expiration of the term of the Current Representation Agreement in March, 2008.

### AS AND FOR A SIXTH CLAIM:
### (Permanent Injunction)

120.        Plaintiff repeats and realleges each and every allegation set forth in paragraph "1"

through "87" hereof, inclusive, with the same force and effect as if same had been set forth

at length herein.

121.        The Cancellation Letter, and defendant's communication of same to the public,

including but not limited to the community of builders, architects and engineers involved in

the selection, purchase and installation of HVACR products, machinery and equipment in

the New York Metropolitan Area, has caused and continues to cause irreparable damage the

reputation of plaintiff with the public and within that community.

122.        In the absence of permanent injunctive relief, to be imposed with respect to the

communication to the public of the alleged cancellation of the Current Representation

Agreement, plaintiff will continue to be caused irreparable damage the reputation of plaintiff

with the public and within the community of builders, architects and engineers involved in

the selection, purchase and installation of HVACR products, machinery and equipment in

the New York Metropolitan Area.

123.        Plaintiff lacks an adequate remedy at law with respect to the foregoing damages.

124.    By reason of the foregoing, an injunction must be made and entered permanently and forever enjoining  to be defendant from communicating to the public generally or to the community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products, machinery and equipment in the New York Metropolitan Area of the alleged termination of the Current Representation Agreement, or the issuance of the Cancellation Letter by defendant.

## JURY DEMAND:

125.    Pursuant to the Seventh Amendment to the United States Constitution and  Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands the right to a trial by jury  for all the issues so triable, which demand was set forth in the Complaint heretofore filed herein.


WHEREFORE, plaintiff, DNT Enterprises, Inc., respectfully requests that the Court grant the following relief against defendant, Technical Systems a Division of RAE Corporation:

a.    On the First Claim, a money judgment in an amount to be calculated at trial, and in any event no less than $5,000,000.00;

b.    On the Second Claim, a money judgment in an amount to be calculated at trial, and in any event no less than $5,000,000.00;

c.    On the Third Claim, a money judgment in an amount to be calculated at trial, and in any event no less than $5,000,000.00;

d.    On the Fourth Claim, a judgment awarding to plaintiff specific performance of the Current Representation Agreement until the expiration of the term of the Current Representation Agreement in March, 2008;

e.        On the Fifth Claim, a judgment declaring plaintiff to be defendant's exclusive representative in the New York Metropolitan Area until the expiration of the term of the Representation Agreement in March, 2008;

f.        On the Sixth Claim, an injunction  an injunction permanently and forever enjoining  to be defendant from communicating to the public generally or to the community of builders, architects and engineers involved in the selection, purchase and installation of HVACR products, machinery and equipment in the New York Metropolitan Area of the alleged termination of the Current Representation Agreement, or the issuance of the Cancellation Letter by defendant; together with

g.        Such punitive or exemplary damages, as may be available to plaintiff pursuant to Oklahoma Law;

h.        Attorney's fees, to the extent that same may be available to plaintiff pursuant to Oklahoma Law; and

i.        Such other, further and different relief as the Court deems just.

Dated: New York, New York
       January 22, 2008

SAMUEL E. KRAMER, ESQ.
*Attorney for Plaintiff*
*DNT Enterprises, Inc.*


By:   S/Samuel E. Kramer
_____
Samuel E. Kramer (SK 6948)
225 Broadway - Suite 3300
New York, New York 10007
(212) 285-2290